JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Larry Collins ("appellant"), appeals his convictions for felonious assault. For the reasons set forth below, we affirm.
 {¶ 2} On February 17, 2005, the Cuyahoga County Grand Jury indicted appellant on eight counts: counts one and two alleged felonious assault, in violation of R.C. 2903.11; counts three and four alleged aggravated robbery, in violation of R.C. 2911.01; count five alleged grand theft, in violation of R.C. 2913.02; count six alleged receipt of stolen property, in violation of R.C. 2913.51; count seven alleged kidnapping, in violation of R.C. 2905.01; and count eight alleged attempted rape, in violation of R.C. 2923.02/2907.05. *Page 4 
 {¶ 3} The first trial of this matter commenced on October 4, 2005. The jury returned a verdict of guilty on count six, receipt of stolen property. The jury, however, found appellant not guilty on counts three through five, seven and eight. Finally, the jury was unable to reach a conclusion, resulting in a mistrial, on counts one and two, felonious assault.
 {¶ 4} The second trial of this matter commenced on February 26, 2007. Appellant was retried on the two remaining counts of felonious assault. At the beginning of the trial, the defense objected to the admission of all DNA evidence and the testimony of Stacy Viola, forensic scientist in the serology DNA section of the Bureau of Criminal Identification and Investigation ("BCI"), arguing that the BCI had failed to send the entire file of the case to the defense's expert, Dr. Krane, for examination, as requested by the defense. In response, the trial court ordered that said material be sent to BCI promptly. On May 5, 2007, Dr. Krane still had not received the BCI material after the testimony of the state's first witness. The defense again objected to the admission of any DNA evidence. The court held in abeyance it decision. Only after Dr. Krane received the BCI data, examined the information and prepared a report, the court permitted admission of the report and testimony of Stacy Viola.
 {¶ 5} Additionally, at the beginning of the trial, appellant objected to the admission of the DNA evidence from the jacket, skull cap and $1.00 bill retrieved from the victim's vehicle. He alleged that the materials were handled by defense *Page 5 
counsel and appellant during the first trial, and thus, were probably contaminated. The trial court overruled his objection.
 {¶ 6} Next, the state presented its case and established the following facts.
 {¶ 7} During the evening of January 14, 2005, the victim, Deborah McDonald, drank two or three beverages at Wolf's bar on Cedar Avenue. While it was dark, she attempted to leave the bar and enter her gray 1991 Ford Escort when she was attacked from behind. She explained she was struck on the side of her face and head and forced into her vehicle. The attacker confiscated her keys and drove from the bar.
 {¶ 8} The attacker transported the victim to a house at 2211 East 89th Street. No one else was present inside the messy and dimly lit home. Inside, the attacker demanded the victim's money, a $1.00 bill, and that she smoke crack with him. She complied with his demands. He then informed her that she was going to have sex with him. When she resisted, he began beating her. She explained that she was bruised, bleeding, her eyes were swollen shut and her head cut open. The victim testified that at one point, she wiped her face with a cloth. He further attempted to pull down her pants but then pulled them up and they left the house.
 {¶ 9} When the two left, the victim broke free from the attacker's hold, ran to a Cadillac nearby where an African-American sat in the driver's seat, and she screamed for help. After the driver did not respond, she ran down the street to Gene's store. There she received assistance. *Page 6 
 {¶ 10} Two days after the incident, police compiled a four person photo array. The victim was unable to identify appellant from the photo array. She explained that it was dark, she was distraught and her eyes were swelled shut and caked with blood. Furthermore, during her testimony, the victim freely admitted that she smoked marijuana earlier in the day, had a few drinks of alcohol at the bar prior to the attack and that the assailant forced her to smoke crack. She was cross-examined regarding these facts, as well as her criminal history, which included a prior drug conviction in which she spent a year in prison in 2003.
 {¶ 11} The driver of the Cadillac, Melvin Brown testified at the trial of this matter. He testified that on the evening of January 14, 2005, he knocked at the 2211 East 89th Street residence, which was the home of his friend, Toni Payne. An African-American male, he later identified as appellant, answered the door and informed him that Toni was not home. Appellant then shut the door. Perplexed, Brown returned to his vehicle, but remained parked in the driveway. He then witnessed the victim run from the house, covered in blood, to his window. She yelled for help and then ran down the street.
 {¶ 12} Brown testified that, shortly thereafter, appellant exited the house and drove off in a gray subcompact vehicle. He drove in the opposite direction where the victim ran. Brown retrieved the license plate number of the vehicle, which was later identified as the victim's vehicle. After appellant left, Brown returned to the house, *Page 7 
peered through the window and saw the home in disarray with blood on the floor and walls. He then called 911.
 {¶ 13} Detective John Vinson testified that, when he arrived at the Gene's store, the victim was bloody and distraught. Nevertheless, she was able to provide the police with a description of her vehicle and of the assailant. More specifically, she described the assailant as an African-American male, about 5'9" in height, medium brown complexion, and wore a red jacket and skull cap. Additionally, she informed the police that he had taken her vehicle, which she described in detail.
 {¶ 14} In response, the police broadcasted over the radio the description of the assailant, as well as the victim's gray 1991 Ford Escort and its license plate number. Several hours later, Officer David Wagner of the Cleveland Police Department and his partner, Gary Heschler, passed an African-American driving a vehicle matching the description given by the victim. The police made a u-turn in an attempt to follow and the assailant sped away. By the time the police caught up to the vehicle, appellant exited the vehicle and fled. The police broadcasted over the radio the occurrence. Officer Wagner later identified appellant as the individual who drove the suspect vehicle and fled the police.
 {¶ 15} Detective Thomas Rauscher and his partner, Stephen Hvranik, heard the broadcast. They were near where the appellant fled and witnessed an African-American male running through yards. They exited their vehicle and chased after the male, later identified as appellant. *Page 8 
 {¶ 16} While chasing appellant, they witnessed him discard something. When Detective Rauscher stopped appellant, he noticed blood on his pants. Detective Rauscher and his partner also retrieved the object appellant discarded — the keys to the victim's vehicle. Consequently, appellant was arrested. During booking, the police noticed blood on appellant's sweater. As a result, the police confiscated his clothing for evidence.
 {¶ 17} At the 2211 East 89th Street residence where the attack occurred, police retrieved bloody boxer shorts, one knife with a black handle, one knife broken in two, the white handle was separated from the blade, the victim's earring, broken white glass, a ceramic mouse and a vase. Detective Amy Duke testified she noticed the walls in the house were covered in blood, furniture was overturned, and broken glass was about.
 {¶ 18} Inside the victim's vehicle, police discovered a red jacket similar to the one the victim described her attacker as wearing. Inside the jacket, police found the victim's identification card, her cigarettes, a lighter and a skull cap.
 {¶ 19} The day after the incident, Melvin Brown returned to the 2211 East 89th Street residence to pick up his friend Toni. That same day, he provided the police with his name, information and the events of the preceding night. Sometime thereafter, although he cannot remember exactly when, Detective Duke showed him a photo array of four individuals and he positively identified appellant from the array as the individual who answered the door to the 2211 East 89th
Street residence on *Page 9 
January 14, 2005, and who drove away in the victim's vehicle while the victim ran to Gene's store bloody and yelling. Finally, he testified that he did not receive any consideration in a criminal case pending against him from the state for testifying in this matter.
 {¶ 20} At the trial, Stacy Violi, the forensic scientist in the serology DNA section of the BCI, testified that she conducted the DNA analysis of various items in this case. She explained that, on April 28, 2005, she examined for DNA evidence on appellant's sweater and pants, the boxer shorts discovered at the 2211 East 89th Street residence, and buccal swabs of the victim and appellant. She determined that there is a probability of one in over 611 trillion, 600 billion individuals that the victim's DNA was contained in the blood that was found upon appellant's sweater, pants, and boxer shorts. Additionally, she testified that she found appellant's semen upon the boxer shorts as well.
 {¶ 21} Violi further testified that on October 25, 2005, she received the red jacket, skull cap and the $1.00 bill discovered in the victim's vehicle. In her report, dated November 7, 2005, she concluded that there is a probability of one in over 611 trillion, 600 billion individuals, that the victim's DNA was found in the blood upon the red jacket. She further testified that the proportion of the population that cannot be excluded as possible contributors to the mixture of appellant's and the victim's DNA on the jacket collar and cuffs is one in 5,631 individuals. Additionally, the victim's blood was discovered on the money, as well DNA from appellant. The expected *Page 10 
frequency of the occurrence of the DNA profile identified on the money is one in one quadrillion, 856 trillion individuals. Finally, Violi was unable to include or exclude appellant as the male DNA on the skull cap.
 {¶ 22} At the summation of the state's case, appellant moved for acquittal pursuant to Crim.R. 29(A). The trial court denied his motion.
 {¶ 23} Defense then moved to admit, among other things, Dr. Krane's expert report regarding DNA. Defense argued that he should be permitted to admit the report into evidence despite its obvious hearsay defects because the defense was prejudiced by the state's delay in sending the BCI data to Dr. Krane. The trial court denied appellant's request for admittance.
 {¶ 24} The defense then rested its case and moved again for acquittal. The trial court denied this request as well.
 {¶ 25} On March 9, 2007, the jury found appellant guilty of the two counts of felonious assault. That same day, the court sentenced appellant to eight years imprisonment for each count of felonious assault, to merge for purposes of sentencing, and 18 months on count six, receipt of stolen property, to run concurrent to the sentence imposed for count one, for a total of eight years.
 {¶ 26} Appellant now appeals to this court. In his first brief, he presented five assignments of error for our review. On January 14, 2008, he filed a supplemental brief, submitting four supplemental assignments of error. In the interests of clarity, *Page 11 
we will address his assignments of error and supplemental assignments of error out of order as needed.
 {¶ 27} Appellant's first assignment of error states:
 {¶ 28} "The trial court erred when it admitted unreliable scientific evidence."
 {¶ 29} As a procedural matter, we note that the decision to admit or exclude evidence is within the broad discretion of the trial court and, absent an abuse of discretion that is materially prejudicial to a party, a trial court's decision will stand. Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 66, 567 N.E.2d 1291. An abuse of discretion connotes more than error of law of judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Tracy v. Merrell DowPharmaceuticals, Inc. (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875.
 {¶ 30} At the trial of this matter, appellant's counsel continuously objected to the admission of the red jacket, skull cap and the $1.00 bill, arguing that the evidence was handled by appellant and others at the first trial, and thus, was probably contaminated before BCI tested the objects for DNA in November of 2005. First, we note that the trial court did not error in allowing admission of the DNA evidence because the possibility of contamination goes to the weight of the evidence, not to its admissibility. State v. King (July 12, 2002), Cuyahoga App. No. 78617. Furthermore, in asserting his claim of contamination, appellant failed to substantiate his claim by directing the court to any evidence in the record indicating contamination. Mere allegations are insufficient to establish a claim of *Page 12 
contamination. In light of these circumstances, we find the trial court did not err in permitting admission of the DNA evidence from the red jacket, skull cap and $1.00 bill. Appellant's first assignment of error is without merit.
 {¶ 31} Appellant's second assignment of error states:
 {¶ 32} "The trial court erred when it did not declare a mistrial for prosecutions [sic] failures to disclose its case to the defense."
 {¶ 33} With regard to our standard of review, we note that the granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v. Treesh, 90 Ohio St.3d 460, 2001-Ohio-4,739 N.E.2d 749; State v. Iacona, 93 Ohio St.3d 83, 2001-Ohio-1292,752 N.E.2d 937. The granting of a mistrial is only necessary when the ends of justice so require and a fair trial is no longer possible. State v.Franklin (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citingIllinois v. Somerville (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066,35 L.Ed.2d 425.
 {¶ 34} Within this assignment of error, appellant maintains that the trial court erred by failing to strike the victim's testimony, and instead, permitting a re-cross-examination of the victim after he became aware of the state's failure to provide the defense with the victim's statement prior to trial.
 {¶ 35} Pursuant to Crim.R. 16(E)(3), the trial court has full discretion to make just orders to correct a prosecutor's alleged failure to provide exculpatory evidence. Crim.R. 16(E)(3) states: *Page 13 
 {¶ 36} "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 37} In State v. Wickline (1990), 50 Ohio St.3d 114, 552 N.E.2d 913, the defense discovered, after a witness's testimony, that the state withheld a police report that contained the witness's statement. Id. at 116. To correct the prosecution's mistake, the lower court ordered the witness's return and permitted the defendant to continue cross-examination. Id. at 116-117. The Supreme Court of Ohio, relying on Crim.R. 16(E)(3), held that the trial court's remedy in that situation was just and ensured a fair trial for the defendant. Id.
 {¶ 38} In the instant matter, the trial court did not abuse its discretion in permitting re-cross-examination of the victim, which is a less drastic sanction for discovery violations than striking the victim's testimony. While cross-examining the victim, the defense learned that she made a written statement to the police. Previously, the appellant had requested said statement in discovery, which the state failed to produce. After the cross-examination of the victim, the trial court reviewed the statement and determined that some inconsistencies existed between the statement and the victim's testimony at trial. Therefore, the trial court recalled the *Page 14 
victim to the stand and permitted the defense to re-cross-examine her regarding the inconsistencies in her statement and her trial testimony. Pursuant to Wickline, supra, such an action by the court was completely within its purview under Crim.R. 16(E)(3), and was sufficient under the circumstances to ensure a fair trial.
 {¶ 39} Next, appellant argues that the state failed to provide defense's expert witness, Dr. Krane, with the BCI data concerning the jacket, skull cap and $1.00 bill until late in the trial. As a result of this delay, appellant alleges he could not properly cross-examine the state's expert, Stacy Violi, or prepare his defense. We find that the state's alleged failure to provide Dr. Krane with the BCI data until later in the trial does not violate appellant's due process rights because the evidence was immaterial.
 {¶ 40} Pursuant to Brady v. Maryland (1963), 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.E.2d 215, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
 {¶ 41} Hence, the issue in a case where exculpatory evidence is allegedly withheld is whether the evidence is material. In United Statesv. Bagley, 473 U.S. 667, 682, 87 L.Ed.2d 481, 105 S.Ct. 3375, the United States Supreme Court ruled that, in ascertaining whether the prosecution improperly suppressed evidence favorable to a defendant, such evidence shall be found material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the *Page 15 
result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." This standard of materiality applies regardless of whether the defense specifically or generally requested the evidence or did not request the evidence at all. Id. at 682.
 {¶ 42} A review of the record in this case establishes that the BCI data is not material evidence. Had the defense been able to discredit the DNA evidence by cross-examining Stacy Viola armed with Dr. Krane's report the outcome of the trial could have been the same as ample circumstantial evidence was presented establishing appellant's guilt. Melvin Brown identified appellant as the individual who answered the door of the house where the crime occurred. Brown also testified that he witnessed appellant leaving the same house and driving away in the victim's vehicle shortly after the victim exited the house, yelling and covered in blood. In the house, the police discovered blood throughout, two knives, a pair of bloody boxer shorts, and the victim's earring.
 {¶ 43} The victim testified that an African-American male beat her repeatedly, causing her to bleed profusely from her head. She further testified that the assailant wore a red jacket and took a $1.00 bill from her. Shortly after the victim fled the house, the police spotted appellant fleeing from the victim's vehicle. When apprehended, blood was present upon his clothing. Inside the vehicle, the police discovered a red jacket, similar to the one described by the victim as the one worn by the assailant. Inside the jacket, the police discovered the victim's identification, *Page 16 
cigarettes and a lighter. In light of this evidence, we find that even if the defense had been armed with Dr. Krane's report while cross-examining Violi, the outcome of the trial would have nevertheless been the same.
 {¶ 44} In light of the foregoing conclusions, appellant's second assignment of error is without merit.
 {¶ 45} Appellant's third assignment of error states:
 {¶ 46} "The trial court erred when it admitted hearsay testimony of Detective Duke."
 {¶ 47} Appellant's fourth supplemental assignment of error states:
 {¶ 48} "The trial court committed reversable [sic] error in its denying appellant his constitutional right to, [sic] cross-examine witinesses [sic] against him pursuant to Crawford v. Washington,541 U.S. 36 (2004)."
 {¶ 49} Within these assignments of error, appellant maintains that the trial court erroneously permitted the hearsay testimony of Detective Duke and Officer Vinson. Additionally, appellant argues that said testimony violated the Confrontation Clause of the United States Constitution.
 {¶ 50} Evid.R. 801(C) defines hearsay as the following:
 {¶ 51} "Hearsay. `Hearsay' is a statement, other than one made by declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Page 17 
 {¶ 52} Statements which explain an officer's conduct while investigating a crime and not admitted to prove the truth of the statement are not hearsay. See Evid.R. 801(C), State v. Blevins (1987),36 Ohio App.3d 147, 149, 521 N.E.2d 1105; State v. Thomas (1980),61 Ohio St.2d 223, 232, 400 N.E.2d 401. The probative value of such statements must outweigh any unfair prejudice. Id., see Evid.R. 403.
 {¶ 53} Appellant argues that the trial court erred when it admitted the testimony of Detective Duke relating to information given to her by the victim. More specifically, appellant complains of Detective Duke's testimony in which she stated that the day after the incident she investigated the Wolf's Den, Gene's Store, and the house on 2211 E. 89th Street. As a result of said investigation, she prepared a signed written statement of the victim. A few days later, Detective Duke searched the victim's vehicle and found a red jacket that contained the victim's identification, cigarettes and lighter, as well as a blue striped hat.
 {¶ 54} Officer Vinson testified that he saw the victim being carried from Gene's store on a gurney with her face "completely covered in blood." Vinson further described the victim as distraught, crying, and in pain. Additionally, he testified that a large amount of blood was also present inside the store. Furthermore, Officer Vinson testified that the victim provided a description of her vehicle and of the assailant. More specifically, she informed Officer Vinson that the assailant was a male, about 5'9'' in height, medium brown complexion, and wore a red jacket and skull cap. Additionally, she informed the police that he had taken her vehicle and *Page 18 
described her vehicle in detail.
 {¶ 55} Detective Duke and Officer Vinson's observations were probative to show their course of investigation. The observations were not admitted to establish the truth of the matter asserted. Also, the probative value was not outweighed by the danger of unfair prejudice. Accordingly, the aforementioned testimony did not constitute hearsay.
 {¶ 56} Furthermore, the testimony of Detective Duke and Officer Vinson does not violate the Confrontation Clause of the United States Constitution. In Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354, 158 L.Ed.2d 177, the Supreme Court held that it is a violation of the Confrontation Clause to admit "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Id. at 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177.
 {¶ 57} A defendant's constitutional right to confrontation is not violated when he/she had an opportunity to cross-examine the accuser at the trial. Detective Duke and Officer Vinson testified to their own firsthand knowledge and the defense was able to confront them directly. Furthermore, the victim did appear to testify at trial. Accordingly, appellant was provided with the opportunity to cross-examine the victim regarding any alleged statements she gave Detective Duke and Officer Vinson, thereby negating any issue with the Confrontation Clause. *Page 19 
 {¶ 58} Finally, appellant argues that the trial court violated the mandates of Crawford, supra, by not allowing him to use the victim's police statement to impeach her testimony. A review of the transcript, however, indicates that the trial court did in fact recall the victim to afford appellant the opportunity to re-cross-examine the victim regarding the alleged inconsistencies in her written statement and testimony in court. (T. 585). Accordingly, appellant's argument in this regard is without merit.
 {¶ 59} In light of the foregoing conclusions, appellant's third assignment of error and fourth supplemental assignment of error are overruled.
 {¶ 60} Appellant's fourth assignment of error states:
 {¶ 61} "The trial court erred when it admitted pretrial and trial idendtification [sic] testimony because the pretrial identification procedures used were unduly suggestive and unreliable."
 {¶ 62} Appellant maintains that Melvin Brown's photograph identification of appellant was impermissibly suggestive and unreliable. First, appellant argues that he had a right to have counsel present during Brown's identification of appellant in the photo array. A defendant, however, has no right to counsel at a photographic identification if he was not there when it occurred. U.S. v. Ash (1973),413 U.S. 300, 321; State v. Perryman (1976), 49 Ohio St.2d 14, 22,358 N.E.2d 1040, 1046, vacated in part on other grounds in Perryman v.Ohio (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156. Accordingly, appellant's argument in this regard is without merit. *Page 20 
 {¶ 63} Furthermore, appellant argues that, under the totality of the circumstances, the photo identification was unduly suggestive and unreliable.
 {¶ 64} When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. State v. Waddy (1992), 63 Ohio St.3d 424, 438,588 N.E.2d 819, citing Manson v. Brathwaite (1977), 432 U.S. 98, 116,97 S.Ct. 2243, 53 L.E.2d 140 and Neil v. Biggers (1972), 409 U.S. 188, 196-198,93 S.Ct. 375, 34 L.Ed.2d 401.
 {¶ 65} The defendant bears the initial burden of establishing that the photographic identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Wills (1997), 120 Ohio App.3d 320,324-325, 697 N.E.2d 1072; Manson v. Brathwaite, supra.
 {¶ 66} The court must determine whether the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384, 19 L.Ed.2d 1247,88 S.Ct. 967.
 {¶ 67} However, no due process violation will be found where an identification is instead the result of observations at the time of the crime and does not stem from *Page 21 
an impermissibly suggestive confrontation. Coleman v. Alabama (1970),399 U.S. 1, 5-6, 90 S.Ct. 1999, 26 L.Ed.2d 387.
 {¶ 68} A court must consider the following factors with regard to potential misidentification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * * ." Neil v.Biggers, supra. The court must review these factors under the totality of the circumstances. Id. Even if the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification." State v. Merrill (1984),22 Ohio App.3d 119, 121, 489 N.E.2d 1057; State v. Moody (1978),55 Ohio St.2d 64, 67, 377 N.E.2d 1008.
 {¶ 69} Here, we do not find the photo identification of appellant by Melvin Brown impermissibly suggestive. In the instant matter, Brown had ample opportunity to view appellant. Appellant answered the door and spoke with Brown briefly. Next, Brown saw appellant leave the house and drive away in the victim's vehicle. In his testimony, Brown was firm in his identification of appellant as the person he encountered at the 2211 East 89th Street residence on January 14, 2005.
 {¶ 70} Moreover, there is nothing in the record to indicate that the identification procedure was unnecessarily suggestive. Detective Duke presented Brown with a four-person photo array. The men all had comparable facial hair and hair styles. *Page 22 
Brown immediately picked appellant as the individual he saw at the 2211 East 89th Street residence during the evening of January 14, 2005.
 {¶ 71} Finally, appellant argues that the photo identification was impermissibly suggestive because Detective Duke first showed Brown the photo array moments before his testimony at trial, thereby tainting his in-court identification of appellant. Other than his mere allegations, appellant has failed to direct this court to any evidence in the record indicating Brown's identification of appellant occurred moments before his testimony at trial other. Neither Detective Duke, nor Brown, testified that Brown was shown the photo array on the day of the first trial. In light of the foregoing, we find that the photo array was well-constituted and not impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This assignment of error is overruled.
 {¶ 72} Appellant's fifth assignment of error states:
 {¶ 73} "The trial court deprived defendant-appellant of hisfourteenth amendment due process right based upon the cumulative effect of its errors in assignments of error one through four."
 {¶ 74} Here, appellant asserts that the cumulative effects of the trial court's erroneous rulings asserted in assignments of error one through three deprived him of a fair trial. Finding no merit in his individual assignments of error, we therefore find no cumulative errors. See State v. Goff, 82 Ohio St.3d 123, 140, 1998-Ohio-369,694 N.E.2d 916; State v. Garner, 74 Ohio St.3d 49, 64, 1995-Ohio-168, *Page 23 656 N.E.2d 623; State v. Webb, 70 Ohio St.3d 325, 335, 1994-Ohio-425,638 N.E.2d 1023. Appellant's fifth assignment of error is overruled.
 {¶ 75} Appellant's first supplemental assignment of error states:
 {¶ 76} "The trial court abused its discretion in denying appellant expert assistance at state expense, thereby denying appellant due process."
 {¶ 77} Appellant's second supplemental assignment of error states:
 {¶ 78} "The trial court denied appellant due process in denying appellant an independent analysis of the states [sic] DNA evidence."
 {¶ 79} Within both appellant's first and second supplemental assignments of error, he maintains that, by limiting the amount of the state's funds appellant could expend for his expert's testimony, the trial court essentially deprived him of his right to expert assistance.
 {¶ 80} Whether to provide state funds to an indigent criminal defendant in order to obtain expert assistance is within the sound discretion of the trial. State v. Mason (1998), 82 Ohio St.3d 144, 150,1998-Ohio-370, 694 N.E.2d 932. Thus, we will not disturb the court's decision absent an abuse of discretion.
 {¶ 81} In Mason, the court held:
 {¶ 82} "Due process * * * requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a *Page 24 
particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial."
 {¶ 83} In the instant matter, the trial court granted appellant the funds to obtain an expert but limited said funds to $1,100.00. As a matter of due process, a defendant may, at his request, within reasonable limits, have at the state's expense experts appointed to act on his behalf. State v. Mason (1998), 82 Ohio St.3d 144, 149-150,1998-Ohio-370, 694 N.E.2d 932. However, where an indigent defendant seeks state-funded expert assistance, the defendant has the burden in establishing the reasonableness of his request. State v. Scott (1987),41 Ohio App.3d 313, 314-315, 535 N.E.2d 379. Due process does not "require that an indigent defendant be provided all the assistance that a wealthier counterpart might buy. Rather, he or she is entitled only to the basic and integral tools necessary to ensure a fair trial." Id. at 149.
 {¶ 84} Our review of the record indicates that the trial court did not abuse its discretion in limiting the state's funds that appellant may spend obtaining expert assistance to $1,100.00. Appellant unreasonably requested $10,000 to cover the expense of his expert, Dr. Krane. This amount was unreasonable considering the fact that Dr. Krane did not conduct his own DNA analysis of the evidence. Rather, he based his opinion on a review of the analysis conducted by BCI. Furthermore, Dr. Krane's presence at trial would only be required for one or two days at most. His *Page 25 
testimony would merely rebut the DNA analysis conducted by BCI. "When a trial court entertains an indigent defendant's motion for the appointment of an expert at the state's expense, it acts as the guardian of public funds, an increasingly scarce resource." State v. Saylor (May 12, 1995), Champaign App. No. 94-CA-10. Accordingly, we find appellant's request for expert assistance unreasonable under the circumstances. Appellant's first and second supplemental assignments of error are overruled.
 {¶ 85} Appellant's supplemental third assignment of error states:
 {¶ 86} "Appellant was denied his constitutional right to a fair trial because of the cummulative [sic], effect of the trial courts [sic] ruleings [sic]."
 {¶ 87} In his supplemental assignment of error, appellant argues that the cumulative effects of the following rulings violated hisFourteenth Amendment to a fair trial: denying appellant expert assistance, denying appellant an independent analysis of the DNA evidence, denying appellant an examination of DNA evidence because of his poverty status, denying appellant the compulsory process to subpoena documents, denial of appellant's request to use the jail law library and legal calls, denying appellant bail and failing to sentence appellant for 16½ months, denial of discovery materials, failure to enforce subpoenas for witnesses' attendance, illegal substitution of counsel, denial of effective assistance of co-counsel, engaging in an abusive patter of granting continuance, and ordering a *Page 26 
psychiatric evaluation. Appellant, however, fails to cite to any authority or statutes or any parts of the record on which he relies in making these numerous allegations.
 {¶ 88} We note that the appellant carries the burden of establishing his claims on appeal through the use of legal authority and facts contained in the record. State v. Taylor (Feb. 9, 1999), Medina App. No. 2783-M; see, also, App.R. 16(A)(7).
 {¶ 89} App.R. 16(A)(7) requires that the appellant's brief possess the following:
 {¶ 90} "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statues, and parts of the record on which appellant relies. The argument may be proceeded by a summary."
 {¶ 91} "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal. Moreover, it is not the duty of this Court to develop an argument in support of an assignment of error if one exists. As we have previously held, we will not guess at undeveloped claims on appeal. Further, this court may disregard arguments if the appellant fails to identify the relevant portions of the record from which the errors are based."State v. Franklin, Summit App. No. 22771, 2006-Ohio-4569. (Internal citations omitted.)
 {¶ 92} Accordingly, appellant's third supplemental assignment of error is without merit.
 Judgment affirmed. *Page 27 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 SEAN C. GALLAGHER, P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1