[Cite as *State v. Medley*, 2018-Ohio-1391.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105760**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CHAD MEDLEY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-606620-A

**BEFORE:**  Jones, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**  April 12, 2018

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
11510 Buckeye Road
Cleveland, Ohio 44104

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Kristin M. Karkutt
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

**{¶1}** Defendant-appellant, Chad Medley, appeals his misdemeanor endangering children conviction, that was rendered after a jury trial. For the reasons stated below, we affirm.

## I. Procedural and factual history

**{¶2}** Appellant is the father of the victim child (date of birth January 27, 2016). His codefendant, C.B., is the mother of the child. In July 2016, appellant and mother were jointly indicted in a two-count indictment after it was discovered that their child suffered a subdural hematoma that was determined to be "non-accidental." Count 1 charged a second-degree felony endangering children count, and Count 2 charged a third-degree felony endangering children count. Both counts contained "furthermore" clauses, alleging that the violations resulted in serious physical harm to the child.

**{¶3}** The case against appellant and mother proceeded to a joint jury trial. At the conclusion of the presentation of the state's case, the defendants moved for a Crim.R. 29 judgment of acquittal, which the trial court denied. The defense rested without presenting any witnesses and renewed its Crim.R. 29 motion, that was again denied.

**{¶4}** After its deliberations, the jury found appellant not guilty of Count 1, but guilty of a lesser included offense of Count 2, endangering children, a first-degree misdemeanor; it found him not guilty of the "furthermore" clause associated with Count

2. The trial court sentenced him to two years of community control sanctions.[1] Appellant now appeals, raising two assignments of error for our review, challenging the sufficiency of the evidence and the weight of the evidence, respectively.

{¶5} The following facts were adduced at trial. As mentioned, the victim, who was born on January 27, 2016, is appellant's child. The child lived with appellant and mother. From May 8, 2016, through May 15, 2016, the child was hospitalized for issues relating to vomiting. It was determined that he had esophageal reflux. The child was hospitalized again on May 22, 2016, because he was shaking and it was believed that he may have had a seizure. Maternal grandmother testified as to the events leading up to the second hospitalization.

{¶6} On the date of the hospitalization, grandmother went to her daughter and appellant's residence. Appellant was not there at the time; mother was there with her two children. Mother asked grandmother if she would watch the children while she (mother) went to the store, and grandmother agreed. Initially, grandmother was playing with the other child, but then went to check on the victim. Upon seeing the child, she noticed that his eyes were "gurgitating" to the side, and that his head was a little swollen. Mother arrived home at about the same time grandmother was checking on the child, and grandmother told her that something was wrong with him; mother called 9-1-1.

{¶7} Grandmother testified that she frequently baby-sat the victim, and would

---

[1]Mother was found guilty in the same manner as appellant, and the trial court imposed the same sentence on her. She has not appealed, however, and thus this decision relates only to father.

usually do so at another daughter's house, where other children would also be present. She noticed when he had the vomiting issues, and she would inform mother and father whenever it happened. Grandmother testified that she never hurt the victim and never witnessed anyone else abuse him either.[2] She also testified that mother and father were good parents.

{¶8} Paternal grandfather also testified. He had baby-sat the victim once, and denied harming him. According to grandfather, appellant told him that the victim was a "little sluggish" because of his vomiting issues. He also testified that mother and father were good parents.

{¶9} One of the paramedics who responded to mother's 9-1-1 call, Brendan Dunn, testified. Mother appeared upset and concerned about the child, and told Dunn that the child had been shaking for approximately one minute and was "acting funny." The child was lying on the floor, with mother next to him, and appeared postictal, meaning he was acting like he had just had a seizure. He tried to get a medical history of the child from mother, but she did not provide any pertinent information. Dunn transported the child to Rainbow Babies and Children's Hospital. He also called 696-KIDS, a hotline which certain professionals are legally obligated to call and make a report if they find something out of the ordinary involving a child in Cuyahoga County.

{¶10} Officer Christopher Gillard of the Cleveland police responded to the

---

[2]Grandmother admitted that she had an 11-year-old conviction for aggravated assault and theft. She also admitted that she had her own children removed from her custody due to neglect, but testified that she was never accused of abusing her children.

hospital, where he saw the child in a hospital bed with a tube in his mouth and his eyes swollen shut. After the officer consulted with the medical professionals and other law enforcement officials, the decision was made to arrest appellant and mother.

{¶11} Lois Graham ("Graham"), a county social worker, was assigned to the case while the child was in the hospital. She recommended that the child not return home to appellant and mother upon his release from the hospital. When he was released on June 17, 2016, he was immediately placed in foster care. Graham visited the child in foster care and testified that he was eating well, had gained weight, and was progressing.

{¶12} A county child protection specialist was assigned to the case and also testified. During her investigation, she spoke with appellant and mother, as well as medical personnel, and did not learn any information that caused her to believe that there was anyone else besides appellant and mother who could have caused injury to the child.

{¶13} Detective Cynthia Bazilius ("Detective Bazilius") of the Cleveland Police Department's sex crimes and child abuse unit was the lead detective on the case. She obtained a search warrant for appellant and mother's house because, during the course of her investigation, appellant informed her that he had kept a hat on the child's head for two or three days. She executed the search warrant for the house and located the hat.

{¶14} Dr. Lolita McDavid ("Dr. McDavid"), the Director of Child Advocacy Protection at Rainbow Babies and Children's Hospital, reviewed the results of an MRI performed on the child. She also consulted with a neuroradiologist concerning the MRI results. Dr. McDavid testified that the MRI showed that the child had bilateral subacute

subdural hematomas. A subdural bleed means that blood is between the brain and the dura, which covers the brain. Bilateral means bleeding on both sides of the brain. Dr. McDavid testified that the child's subdural hematomas were subacute, meaning that the injury was between 7 and 21 days old.

{¶15} According to Dr. McDavid, a subdural hematoma can be caused by being hit in the head or by shaking. She testified that if blood is seen behind the eyes it usually means that the subdural hematoma was caused by a shaking motion. Bleeding was found within the retinal scan taken in this case. Further, she found no evidence that the injury was caused by blunt force trauma. Thus, Dr. McDavid opined that the child's injuries were the result of a shaking injury and the cause of the injuries was non-accidental.

## II.   Law and analysis

{¶16} We consider appellant's two assignments of error together; in the first assignment he contends that the evidence was insufficient to support the conviction and in the second assignment, he contends that the conviction was against the manifest weight of the evidence.

{¶17} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The Supreme Court of Ohio delineated the role of an appellate court presented with a sufficiency of the evidence

argument in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *

{¶18} Whether the evidence is legally sufficient is a question of law, not fact. *Thompkins* at 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 767 N.E.2d 216 (2002), ¶ 79; *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001); *Jenks* at 273.

{¶19} A manifest weight of the evidence claim requires a different review. The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Brindley*, 10th

Dist. Franklin No. 01AP-926, 2002-Ohio-2425, ¶ 16. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "'reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at *id.*

{¶20} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21. Neither is a conviction against the manifest weight of the evidence because the trier of fact believed the state's version of events over the appellant's version. *State v. Gale*, 10th Dist. Franklin No. 05AP-708, 2006-Ohio-1523, ¶ 19; *State v. Williams*, 10th Dist. Franklin No. 08AP-719, 2009-Ohio-3237, ¶ 17. The trier of fact is free to believe or disbelieve all, part, or none of the testimony. *State v. Sheppard*, 1st Dist. Hamilton No. C-000553, 2001 Ohio App. LEXIS 4590, 22 (Oct. 12, 2001).

{¶21} Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding

that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. Braxton*, 10th Dist. Franklin No. 04AP-725, 2005-Ohio-2198, ¶ 15, citing *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 Ohio App. LEXIS 4255 (Sept. 17, 1997). "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.* In that regard, we first examine whether appellant's convictions are supported by the manifest weight of the evidence. *State v. Sowell*, 10th Dist. Franklin No. 06AP-443, 2008-Ohio-3285, ¶ 89.

{¶22} Appellant was convicted of child endangerment under R.C. 2919.22(A), which provides in relevant part that

> [n]o person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶23} "Substantial risk" is defined as a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). A child endangerment conviction under R.C. 2919.22(A) requires proof of recklessness. *Cleveland Hts. v. Cohen*, 2015-Ohio-1636, 31 N.E.3d 695, ¶ 25 (8th Dist.). "A person acts recklessly when, with heedless indifference to the consequences, he [or she] perversely disregards a known risk that his [or her] conduct is likely to cause a certain result, or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶24}** The goal of R.C. 2919.22(A) is to prevent acts of omission or neglect involving a child. *Cohen* at ¶ 27. Therefore, it is not necessary to show an actual injury or a pattern of physical abuse by the defendant to support a conviction under the statute. *Id.* Rather, a child endangering conviction may be based on isolated incidents or even a "'single rash decision'" in which a parent puts his or her child's health or safety at risk. *Id.*, quoting *State v. James*, 12th Dist. Brown No. CA2000-03-005, 2000 Ohio App. LEXIS 5905, 6-7 (Dec. 18, 2000).

**{¶25}** Appellant does not contest that the child was under 18 years of age or that he suffered bilateral subacute hematomas. Instead, appellant contends that the state failed to directly demonstrate that he abused the child. Direct evidence and circumstantial evidence possess the same probative value and therefore are subjected to the same standard of proof, however. *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997).

**{¶26}** In *State v. Piggee*, 8th Dist. Cuyahoga No. 101331, 2015-Ohio-596, for example, this court considered a child endangering conviction against a mother who sometimes left her baby with father, who she knew had a temper and of whom she had concerns about leaving the baby with. The mother and father were the primary people who had access to the baby. Mother claimed that the state's evidence was insufficient because there was a lack of evidence that she injured the baby, that she allowed the father to injure the baby, or that she was even aware that any abuse had occurred.

**{¶27}** This court rejected the mother's claim, stating that, although "there may

have not been overwhelming direct evidence that [mother] herself caused the baby's injuries, there was substantial evidence that she either caused his serious injuries or was complicit in that regard." *Id.* at ¶ 39.

{¶28} Here, appellant and mother were the primary caregivers for their child. Maternal grandmother did babysit for the child, but she denied that she ever shook or abused the child. Paternal grandfather only babysat the child once.

{¶29} Appellant told Detective Bazilius that the child was often "droopy" and had been vomiting for a month. He also described his child a being a "little sluggish." Appellant also told Detective Bazilius that he wished he knew that "shaking and stuff" could have caused his child not to eat. Further, appellant claimed that in the days leading up to the child's hospitalization, he did not notice that he had a swollen head because he had kept a hat on the child for two to three prior days.

{¶30} On this record, we find that the manifest weight of the evidence supports the child endangering conviction against appellant; that is, that he created a substantial risk to the health or safety of the child by violating a duty of care. We therefore, for the reasons already discussed, necessarily find that the evidence against appellant was sufficient.

{¶31} In light of the above, appellant's two assignments of error are overruled.

{¶32} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common

pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR