[Cite as *State v. Banks*, 2020-Ohio-3029.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108166 |
| v. | : | |
| DA'MONTAIS BANKS, JR., | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622412-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher D. Schroeder, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Following a jury trial, defendant-appellant Da'Montais Banks, Jr. was found guilty of three counts of aggravated murder, two counts of murder, one count of attempted murder, four counts of felonious assault and three counts of aggravated robbery amongst other crimes, most with criminal gang activity specifications and

multiple firearm specifications.[1]  In this appeal Banks challenges the evidence as it pertains to two aggravated murder counts and he argues the court impermissibly admitted "gang expert" testimony.  We affirm.

**Assignments of Error**

> 1. The trial court erred in entering judgment of conviction of aggravated murder on Count 19 and Count 33 of the indictment when such convictions were based on insufficient evidence, in violation of Defendant's rights under the 14th Amendment to the United States conviction [sic].
>
> 2. The trial court erred in entering a judgment of conviction of aggravated murder on Count 19 and Count 33 of the indictment when such convictions were against the manifest weight of the evidence, in violation of Defendant's rights under the 14th Amendment to the United States conviction [sic].
>
> 3. The trial court erred in admitting testimony of a "gang expert," in violation of Ohio Evid. Rule 702 and 704.

**Factual Background**

{¶ 2} The three counts of aggravated murder stem from two homicides. Both Carlos Hurt and Banks' friend Julius Claxton were shot and killed on the night of January 25, 2017.[2]  In both Counts 19 and 20, Banks was charged with aggravated

---

[1] This appeal follows Banks' second trial. At the first trial, Banks was charged with 45 individual counts, including those related to four homicides. The jury found Banks guilty of tampering with evidence and participating in a criminal gang and acquitted him of counts related to two of the homicides. However, the jury was unable to reach a unanimous verdict as to the counts pertaining to the other two homicides. A second trial was held at which the jury found Banks guilty of all unresolved counts.

[2] Additionally, Darien Hayes, also friends with Banks, was shot and killed that night.  However, Banks was not charged in relation to his death.  There was evidence that both Hayes and Claxton were in the same gang as Banks.

murder relating to Hurt's death. In Count 33, Banks was charged with aggravated murder relating to Claxton's death.

{¶ 3} At trial, the state presented evidence that, prior to that evening, Banks was in a gang and had been involved in a feud with a high-ranking member of a rival gang. In the days prior to the shootings, via social media, Banks admitted that he "got into it" with this rival gang member, identifying him by name and gang affiliation. Banks further stated he was previously involved in a "[b]ig shoot out [sic]" with him. The state argued that this strife provided Banks with motive to try to kill the rival gang member.

{¶ 4} Hurt was unrelated to the feud between Banks and the rival gang member, however that night he was parked on the street and sitting in his car. Hurt was employed providing various services for disabled people. That evening, Hurt was providing transportation for a client so that he could visit his aunt at her home at 13618 Glendale Avenue. The aunt testified that Hurt had provided her nephew such transportation before and that he would usually wait in the car during the visits, reading or working on the schedule for the food bank at his church.

{¶ 5} The aunt stated that around 7:30 or 7:45 p.m. she heard screaming coming from outside. She went outside to see what was going on and saw Hurt lying on the ground with a gunshot wound to his thigh. Hurt told her "[t]hey shot me. Those mother******s shot me." The gunshot lacerated Hurt's right femoral artery and he died from excessive blood loss on her driveway shortly thereafter. Police recovered a single bullet casing from the scene. Although no gun was found, forensic

analysis of the bullet casing revealed that the bullet that killed Hurt was fired from a 9 mm Glock pistol.

{¶ 6} Police recovered Claxton's cell phone after his own subsequent death that evening and GPS location information retrieved from it indicated that Claxton was within a one hundred meter radius of Hurt when Hurt was shot. Police did not recover Banks' cell phone but did acquire cell site location data pertaining to it that indicated that Banks' location was consistent with both Claxton and Hurt at the time Hurt was shot.

{¶ 7} At approximately 8:00 p.m. that same night, Maria Davidson was returning to her home at 9718 Heath Avenue in her Nissan Rogue with her nearly two-year-old granddaughter sitting in the back seat. As she drove down her street, she observed a dark-colored Jeep pass her coming from the opposite direction. She parked in her driveway. As she was getting her granddaughter out of the back seat she noticed the same Jeep approaching her again from the other direction, going "very, very slow[ly]." A man approached her and proceeded to point a gun at her. She did not see his face or recall exactly what he said to her. She instinctively gave him the keys and was able to get her granddaughter out of the car before he drove away in her Rogue.

{¶ 8} Claxton's mother owned a black Jeep. Forensic analysis of Claxton's phone revealed that on that evening Claxton sent and received text messages related to him borrowing and returning the Jeep. GPS location information retrieved from the phone reflected that Claxton was within a one hundred meter radius of Davidson

when she was carjacked. Cell site location data indicated that Banks' location was consistent with both Claxton and Davidson when her car was stolen.

{¶ 9} At approximately 8:45 p.m. that same night, as confirmed by surveillance video footage from multiple vantage points and the subsequent investigation, Claxton drove two other men in the stolen Rogue to the intersection of Harvard Avenue and East 142nd Street for the purpose of a drive-by shooting. At the opposite end of the intersection was their intended target, the rival gang member with whom Banks had a feud.

{¶ 10} Armed and sitting in the back seat of the stolen Rogue was Darien Hayes. According to the state, Banks was the third man in the Rogue, sitting in the front passenger seat and armed with two pistols.

{¶ 11} The surveillance video clearly shows the Rogue turning left at the intersection, giving the two passengers a clear shot at the rival gang member but also exposing the broad side of the vehicle. Gunfire can be seen originating from both the front and rear passenger areas. The rival gang member and others nearby returned fire.

{¶ 12} Claxton was hit and instantly killed, causing the Rogue to slowly collide with a parked car. The man alleged to be Banks, sitting in the front passenger seat, immediately got out of the car and ran away leaving Hayes alone in the back seat. Hayes subsequently tried to flee as well, however a gunshot wound hindered his attempt. Hayes was quickly gunned down in the street near the Rogue, shot several more times at point blank range before he died at the scene. There is no

indication from the video that the intended target or anybody with him suffered any injury.

{¶ 13} Police subsequently recovered two firearms from inside the Rogue. In the front passenger area police found a Springfield Armory .45 pistol. DNA swabs from this pistol revealed that it was laden with Banks' DNA. Banks was the major DNA contributor to samples taken from the gun's magazine, slide, grip and trigger. Banks' DNA was similarly located on the outside front passenger door handle of the Rogue. He was also the major DNA contributor to this sample.

{¶ 14} In the back seat police located a Romarm "Mini-Draco," a firearm described as resembling an AK-47. Hayes' DNA was on the Mini-Draco. That firearm was registered as belonging to Amanda White, Hayes' girlfriend.

{¶ 15} Dozens of bullet casings were recovered from inside the Rogue including many traced to the Springfield .45 and the Mini-Draco. Police also found 9 mm bullet casings inside the Rogue that originated from a firearm that was not recovered. Forensic analysis of the 9 mm bullet casings revealed that they were fired from the same 9 mm Glock pistol that was used to kill Hurt earlier that evening.

{¶ 16} GPS location information recovered from Claxton's phone reflected that he was within a one hundred meter radius of the drive-by, indeed, police found his body in the driver seat of the Rogue. As was the case with both the Hurt shooting and the Davidson carjacking, Banks' cell site location data was consistent with Claxton's location and scene of the crime.

{¶ 17} The next day police went to White's house.  There, police found Banks and took him into custody.  Because of the substantial gunfire from the night before police asked Banks whether he had any injuries.  Banks denied that he was injured however police discovered that he had an untreated wound to his right nipple described as a "linear injury consist with skin being ripped * * * or torn."

**Law and Analysis**

### First and Second Assignments of Error

{¶ 18} App.R. 16(A)(7) requires an appellant to assert "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."  This court may disregard an assignment of error where an appellant fails to support his or her argument with citation as required by App.R. 16(A).  App.R. 12(A)(2); *State v. Lawshea*, 8th Dist. Cuyahoga No. 101895, 2015-Ohio-2391, ¶ 51 (failure to provide legal authority in support of argument, alone, is sufficient ground to overrule assignment of error).

{¶ 19} We note that the only legal authority Banks included in his first and second assignments of error relates to this court's standard of review.  Nevertheless, considering the merits of Banks' arguments in these assignments we find no error.

{¶ 20} In the first assignment of error, Banks argues that he was convicted upon insufficient evidence in Counts 19 and 33.  In the second, he claims his

convictions in Counts 19 and 33 are against the manifest weight of the evidence.  We discuss each count in turn.

**Count 19**

{¶ 21} In Count 19 the jury found Banks guilty of aggravated murder for causing the death of Carlos Hurt.  Banks' challenges to Count 19 must fail because there is no Count 19 conviction for him to attack.

{¶ 22} Review of the record reflects that Banks was found guilty of all counts charged, including Counts 19, 20, 21, 22, 23, 24 and 25.  Pursuant to R.C. 2941.25, the trial court conducted a merger analysis and determined that Counts 19 through 25 were allied offenses and would, therefore, merge for sentencing purposes.  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 24.  Following the state's election, the trial court imposed sentence on Count 20, which was also for aggravated murder.  As such, Banks was not sentenced on the other counts subject to this merger, including Count 19.

{¶ 23} Finding of guilt notwithstanding, because Counts 19 through 25 merged and because the court sentenced Banks on Count 20 there is no Count 19 conviction.  *State v. Worley*, 8th Dist. Cuyahoga No. 103105, 2016-Ohio-2722, ¶ 23, quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12 ("For the purposes of R.C. 2941.25, a '"conviction" consists of a guilty verdict *and* the imposition of a sentence or penalty.'") (Emphasis sic.).  Banks cannot challenge a conviction that does not exist.  *See id.* ("The counts that merged with the [count

of] conviction are not convictions, and therefore, we cannot individually review the evidence supporting those findings of guilt.").

{¶ 24} We thus find no merit in Banks' claims as to Count 19 and overrule the first and second assignments of error as they relate to them.

{¶ 25} Moreover, we note that Banks does not challenge the evidence underlying his Count 20 conviction. He makes no claim that the conviction was based on insufficient evidence or against the manifest weight of the evidence. *See State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14 ("When counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency of the evidence on the count that is subject to merger because any error would be harmless."); *see State v. Lammkin*, 10th Dist. Franklin No. 18AP-398, 2019-Ohio-682, ¶ 15, fn. 1 ("Because the murder count merged with the aggravated murder count at sentencing, we need not address [the appellant's] manifest weight challenge to the murder count.").

**Count 33**

**Sufficiency of the Evidence**

{¶ 26} Banks challenges the sufficiency of the evidence as to Count 33. In Count 33 Banks was found guilty of aggravated murder for his role in causing Julius Claxton's death. The court imposed sentence on this count.

{¶ 27} Banks' contention is that the DNA and cell site evidence are too imprecise to establish his identity as the assailant who fled. He does not dispute that

he was the major contributor of DNA to samples taken from the pistol and car door and he does not dispute that his location was consistent with the crime scenes at the relevant times. As to the DNA evidence, Banks complains that it is inconclusive as to whether it was he or somebody else who deposited his DNA on the pistol and door handle. As to the cell site location evidence, Banks complains that it is inconclusive as to whether he was present at the crime scenes or merely "somewhere in the vicinity." Although this argument presents more of a manifest weight challenge than a sufficiency challenge, we nevertheless address the sufficiency of the evidence.[3]

{¶ 28} A challenge to the sufficiency of the evidence requires this court to view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

{¶ 29} Banks articulates no basis for us to conclude that there was insufficient evidence for conviction. This court has rejected arguments that challenge similar DNA evidence. *See, e.g., State v. Littlejohn*, 8th Dist. Cuyahoga No. 101549, 2015-Ohio-875, ¶ 34 ("Although [the analyst] could not state, based on the results of the DNA testing whether [the defendant], as the majority contributor, was the last person to wear the gloves, it does not negate the significance of the DNA evidence."); *see, e.g., State v. Brown*, 8th Dist. Cuyahoga No. 98881, 2013-Ohio-

---

[3] As discussed below, Banks asserts substantially the same claim as his manifest weight argument.

2690 (where evidence showed defendant was major contributor DNA profile on ripped shirt similar to masks used by intruders found at crime scene, the fact that there were other minor contributors did not warrant overturning defendant's convictions).

{¶ 30} As to cell site location data, this court has recognized that "'potential problems with estimating a cell phone's location based on phone records' go to the weight of the cellular testimony not its reliability or admissibility." *State v. Wilson*, 8th Dist. Cuyahoga No. 104333, 2017-Ohio-2980, ¶ 33, quoting *State v. Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203, ¶ 70 (8th Dist.).

{¶ 31} The state presented ample circumstantial evidence supporting conviction in Count 33. Circumstantial evidence inherently possesses the same probative value as direct evidence. *Jenks*, 61 Ohio St.3d at 272. Here, Banks was the major contributor of DNA found on the pistol recovered from the front passenger compartment as well as DNA found on the front passenger door handle. Banks' cell phone location was consistent with Claxton's GPS location at each crime scene. Moreover, Claxton's location was within one hundred meters of each crime. The next day police found Banks at one of the perpetrator's girlfriend's house with an untreated wound that he denied and attempted to hide from police. Moreover, Banks had an ongoing feud with the target of the drive-by and had admitted to being involved in a previous shootout with him. We find there to be sufficient evidence for conviction and overrule the first assignment of error.

**Manifest Weight of the Evidence**

{¶ 32} Banks argues that his Count 33 conviction is against the manifest weight of the evidence. He claims that the DNA and cell site location evidence are "far too ambiguous" to support conviction.

{¶ 33} Evaluating a manifest weight of the evidence challenge requires this court to review the record, weigh the evidence and reasonable inferences, consider witness credibility and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and thereby created a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In conducting such a review, we remain mindful that witness credibility and the weight to be given to evidence are primarily assessments for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Reversal on the weight of the evidence is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 34} Banks concedes that "it is not necessary for [this court] to evaluate the conflicts in the evidence or consider the credibility of the witnesses." He makes no claim that there is a conflict in the evidence. He does not challenge witness credibility. Further, he does not argue that there is any evidence that weighs against conviction.

{¶ 35} Banks' argument is that that the DNA evidence and cell site location evidence are too imprecise to conclusively establish that he was the shooter in the front passenger seat who fled. As to the DNA evidence, as previously stated, Banks does not dispute that he was the major contributor of DNA found on both the front passenger door handle and on the pistol recovered from the front passenger compartment. Instead, he suggests that somebody else could have deposited his DNA in these locations. As stated, this court has rejected similar challenges to DNA evidence. *See, e.g., Littlejohn*, 2015-Ohio-875, ¶ 34-35 (citing cases rejecting similar claims).

{¶ 36} As to the cell site location evidence, again, Banks does not dispute that his phone was connected to the cell tower that serves the location of the drive-by at the time it occurred. Instead, he suggests that while connected to that cell tower he could have instead been "one or two streets over, with no involvement in [the drive-by]." Irrespective of whether the cell site location data precisely establishes Banks' location during the drive-by or proves that he was the fleeing shooter, it fails to contradict any of the other evidence establishing guilt and it does not constitute evidence weighing heavily against conviction.

{¶ 37} Regardless of whether it is possible that another person could have deposited Banks' DNA on the door handle and pistol, and in an amount greater than their own, or whether the cell phone location data could not exclude locations adjacent to the scene of the drive-by, the jury was not persuaded by these speculative claims. *See State v. Gardner*, 8th Dist. Cuyahoga No. 107573, 2019-Ohio-1780, ¶ 38,

citing *State v. Medley*, 8th Dist. Cuyahoga No. 105760, 2018-Ohio-1391, ¶ 20. ("[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.").

{¶ 38} Furthermore, and contrary to Banks' assertion, Banks' DNA and location were not presented to the jury in isolation. Rather, as discussed, the state also presented Claxton's GPS location that placed him at the each of the three crime scenes at the time of each crime. Moreover, the state also presented evidence that the day after the drive-by, police found Banks at Hayes' girlfriend's house with a fresh wound that he attempted to conceal from police. Further, the state presented evidence that Banks was in the midst of a feud with the intended target of the drive-by.

{¶ 39} Our review of the record reflects no inconsistencies or conflicts in the evidence or credibility issues with the witnesses. *See State v. Buchar*, 5th Dist. Tuscarawas No. 2017AP010003, 2017-Ohio-7601, ¶ 21. Banks' conviction in Count 33 is not against the manifest weight of the evidence. We overrule the second assignment of error.

**Third Assignment of Error**

{¶ 40} In the third assignment of error, Banks argues that Detective Christopher Mobley, the state's gang expert witness, "invaded the province of the jury" when he testified that after his investigation, he concluded that Banks was a gang member. Banks claims that Mobley's conclusion constitutes a legal conclusion and that the trial court thus erred by admitting this testimony.

{¶ 41} "The admission of expert testimony is within a trial court's discretion." *State v. Williams*, 74 Ohio St.3d 569, 576, 660 N.E.2d 724 (1996), citing *State v. Williams*, 4 Ohio St.3d 53, 446 N.E.2d 444 (1983), at the syllabus. This court will not reverse a trial court's evidentiary ruling absent an abuse of discretion that causes material prejudice to the defendant. *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). A trial court abuses its discretion by acting "unreasonably, arbitrarily, or unconscionably." *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

{¶ 42} At trial, Mobley did testify that Banks was a gang member. However, before he stated this conclusion, he testified as to the gang itself and the unique coded language and hand signals members use to identify themselves as such. Mobley also testified about Banks specifically. He identified Banks in photographs posing with other known gang members. Mobley interpreted social media photographs, videos and captions featuring Banks wherein he used such language and signals to intimate that he was a gang member in some places and, more openly declare it in others. *See State v. Bidinost*, 71 Ohio St.3d 449, 454, 644 N.E.2d 318 (1994) ("[E]xpert testimony is admissible if it will assist the trier of fact in understanding the evidence in the case or in determining a fact in issue. Such testimony must be beyond the common knowledge of the jurors.").

{¶ 43} Banks concedes that "it was permissible for Detective Mobley to offer his knowledge of gangs," arguing only that the only impermissible statement in Mobley's testimony was his conclusion that Banks was in a gang. *But see* Evid.R. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not

objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."). Banks does not challenge any of the evidence upon which Mobley based his conclusion.

{¶ 44} We do not need to determine whether it was improper for Mobley to testify that Banks was a gang member or whether the court erred by permitting him to do so. Even assuming that it was error, the error would be harmless beyond a reasonable doubt in light of the overwhelming evidence of guilt in this case. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."); *see State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 47 (error is harmless beyond reasonable doubt if overwhelming evidence of guilt remains after improper evidence is excised). Putting aside Mobley's stated conclusion that Banks was a gang member, the jury still had ample evidence that Banks does not challenge, by which it could conclude the same.

{¶ 45} Moreover, we note that although this evidence served to substantiate the gang specifications, it is ancillary to establishing guilt as to the underlying counts: at best it shows motive. The evidence establishing Banks' guilt of the underlying counts was both overwhelming and unrelated to Mobley's conclusion that Banks was in the gang.

{¶ 46} As such, Banks cannot prove that Mobley's statement prejudiced him. We overrule this assignment of error.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
MICHELLE J. SHEEHAN, J., CONCUR