[Cite as *State v. Yafanaro*, 2026-Ohio-1766.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                      No. 115275

    v.                            :

THOMAS YAFANARO,                        :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692664-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Chloe Robinson, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Thomas Yafanaro ("Yafanaro") appeals the trial court's determination of a restitution award and his convictions and asks this court

to remand to the trial court for another determination of restitution and to vacate his convictions. We affirm.

{¶ 2} Yafanaro was found guilty of breaking and entering, a fifth-degree felony, in violation of R.C. 2911.13(A); vandalism, a fifth-degree felony, in violation of R.C. 2909.05(B)(1)(b); grand theft, a fourth-degree felony, in violation of R.C. 2913.02(A)(1); and two counts of having weapons while under disability, third-degree felonies, in violation of R.C. 2923.13(A)(2) and (3). Additionally, according to the journal entry, the jury found beyond a reasonable doubt that the value of the property or services that was stolen was not valued at $7,500 or more and less than $150,000. Journal Entry No. 196135714 (May 19, 2025). At sentencing, the trial court stated:

> But they did come back with guilty verdicts on Count 1, which is a charge of breaking and entering, a felony of the fifth degree. The jury previously found him guilty of Count 1, a charge of breaking and entering, a felony of the fifth degree, Count 2, a charge of vandalism as a felony of the fifth degree. Again, Count 3, which is now a misdemeanor of the first degree,[1] and then also to Counts 4 and 5, which are each charges of having weapons while under disability under I suppose alternate theories of the disability, one being a drug offense, as I recall, and the other — I am not sure what the other one was, but in any event, they also found him guilty of the forfeiture specifications.

Tr. 532-533. Yafanaro was sentenced to 40 months' imprisonment and ordered to pay $18,290 in restitution.

---

[1] On this record regarding Count 3, under the furthermore clause the jury did not determine a specific amount regarding the theft. In the State's opinion, the State conceded to this fact.

## I.     Facts and Procedural History

{¶ 3}    On May 29, 2024, Westlake Police Department responded to Savvy Silver Coin and Jewelry Exchange ("Savvy") for a reported break in.  At the trial, Officer Nicholas Ballinger ("Ofc. Ballinger") testified that he responded to the break-in at Savvy's.  Tr. 267.  Ofc. Ballinger stated that when he arrived at Savvy, the big, large pane of glass that consisted of the front door of the store was laying flat on the ground.  He further testified that he could see the display cases that had been ransacked and the doors were broken off the back of the cases.  Tr. 270.  Ofc. Ballinger observed that Savvy had two camera systems in the store, and he reviewed the video footage while at the store.  Tr. 271.

{¶ 4}    Ofc. Ballinger testified that the video footage showed the suspect pulling out a pry bar from his coat and popping two of the metal slats along the door that held the glass in place and removed the glass.  The suspect was wearing a dark ball cap, a dark jacket, dark pants, leather shoes or boots, dark gloves, and a face covering.  Tr. 273.  The suspect entered the store, went behind the display cases, ripped off the back, and began loading items from the display case into a bag.  Ofc. Ballinger observed that the suspect's jacket was buttoned to the bottom and closed.  However, once the suspect stood up from behind the display case, his coat was unbuttoned.  Tr. 274.

{¶ 5}    While walking through the store with the store owner, the store owner noticed that there were two small black coat buttons near the display case where the suspect crouched down and pulled the doors off.  Ofc. Ballinger took the buttons as

evidence. The buttons were swabbed for DNA and sent to the lab for testing. The DNA, located on the buttons and the dismantled doorframe pieces, belonged to Yafanaro.

{¶ 6} Officers reviewed additional video surveillance footage outside of Savvy taken earlier that morning and saw a motorcycle going through an intersection close to Savvy at around 1:40 a.m. Officers used a license plate reader to identify the license plate and found that the motorcycle was registered to Yafanaro. Police obtained a warrant and searched Yafanaro's property. They discovered a firearm, the motorcycle, and a jacket missing two buttons.

{¶ 7} Before officers focused on Yafanaro, the store owner suspected a former employee that was upset about his termination of the break in. However, he had an alibi during the time of the break in. The officers then considered Yafanaro their prime suspect.

{¶ 8} The owner of Savvy testified that he was alerted to a break-in at Savvy. Living close to the store, he promptly arrived and observed glass on the floor and police officers around the building. The store owner testified that gold coins, silver coins, and one ounce of silver bars were missing, an approximate value of $15,000 to $18,000. Tr. 347. He further testified that he reviewed Savvy's surveillance tapes and noticed Yafanaro "casing the joint for about two hours in the morning and then Memorial weekend was when it happened." Tr. 349. He took the surveillance footage to the police.

**{¶ 9}** Next, the store owner testified that he did not recover any of the items stolen. He called a few different coin shops in the area with no success. He stated that based on his inventory sheets and the number of coins taken, he estimated that the value of the stolen items were closer to $17,000 to $18,000. Tr. 358. The store owner also testified that originally, he gave the police the name of a former employee that he thought was involved as retaliation against him. However, he stated that the police took over the investigation from there. He also stated that he recognized Yafanaro from him coming to Savvy once.

**{¶ 10}** The store owner further testified that while he did not have to shut his business down as a result of the break in, he did have to replace the door and everything that was broken. On redirect, the store owner testified that he looked around the store and found the buttons on the floor. They stood out because they were not previously there.

**{¶ 11}** Next, Detective Jim Scullen ("Det. Scullen") testified when the police arrived at Savvy, they collected several pieces of evidence including the door frame and two buttons located on the floor. They also swabbed the door frames, on the inside of the door frame of the front door because when they reviewed the video, the suspect touched the inside of the door frame. They also swabbed other parts of the frame that the suspect touched to gain entry into the business. Additionally, they tested the DNA on the buttons. Given the evidence, the police determined that Yafanaro was their suspect and obtained a search warrant for his residence.

{¶ 12} The police searched Yafanaro's home and recovered a firearm from a kitchen cabinet. They also observed his motorcycle as having the same license plate as the motorcycle they saw on the surveillance camera riding around the area where Savvy is located. They also recovered shoes from his home that appeared to be the same style as the shoes the suspect wore at the time of the break in. The police recovered a dark-colored coat where two buttons were missing and a dark-colored bandana.

{¶ 13} Yafanaro was arrested and charged with breaking and entering, vandalism, grand theft, and having weapons while under disability. He was found guilty on all counts and sentenced to 40 months' imprisonment. At sentencing, the trial court asked: "I don't recall if there was testimony concerning the amount or cost for the damage done? Do you have that information?" Tr. 537. The attorney replied: "We had the victim with the police report, which indicates the total loss was $18,290." *Id.* The store owner did not seek restitution for the broken door. Yafanaro did not object to the restitution order and indicated to the trial court he had nothing to say. The trial court ordered Yafanaro to pay $18,290 in restitution. He filed this appeal assigning two errors for our review:

1. The trial court erred in finding restitution in the amount of $18,290; and

2. The verdict was against the manifest weight of the evidence.

## II. Restitution Order

### A. Standard of Review

{¶ 14} Appellate courts review trial courts' restitution orders for abuse of discretion. *Cleveland v. Rushton*, 2020-Ohio-1281, ¶ 35 (8th Dist.), citing *State v. Norman*, 2017-Ohio-752, ¶ 18 (8th Dist.). Yafanaro did not object to the restitution order at the sentencing hearing, so we review for plain error. *Cleveland v. Pate*, 2013-Ohio-5571, ¶ 36 (8th Dist.). Pursuant to Crim.R. 52(B), "plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "When a restitution order is not supported by competent, credible evidence, the trial court has committed plain error." *Rushton* at ¶ 35, citing *Grove City v. Sample*, 2018 Ohio App. LEXIS 4929, *13 (10th Dist. Nov. 15, 2018).

### B. Law and Analysis

{¶ 15} In Yafanaro's first assignment of error, he argues that the trial court erred in finding restitution in the amount of $18,290 because it was not supported by competent, credible evidence. "R.C. 2929.28(A)(1) authorizes trial courts to order a misdemeanor offender to pay restitution to the victim of his or her crime in an amount based on the victim's economic loss." *Rushton* at ¶ 36.[2] "The statute defines 'economic loss' means 'any economic detriment suffered by a victim as a

---

[2] R.C. 2929.18 addresses financial sanctions after a felony conviction. Subsection (A)(1) allows a trial court to award restitution, and it states in part: "Restitution by the offender to the victim of the offender's criminal offense or the victim's estate, in an amount bases on the victim's economic loss." This language is similar to language in the misdemeanor section of the Revised Code that also authorizes a trial court to order restitution to a victim of a crime.

direct and proximate result of the commission of an offense and includes . . . any property loss . . . incurred as a result of the commission of the offense.'" *Id*., quoting R.C. 2929.01(L).

> [I]f the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

*Id*., quoting R.C. 2929.28(A)(1).

{¶ 16} "'The record must contain competent, credible evidence from which the court can discern the amount to a reasonable degree of certainty.'" *Id*. at ¶ 37, quoting *Grove City*, at *12; *see also Cleveland v. Gosier*, 2016-Ohio-7961, ¶ 14 (8th Dist.). "If the offender, victim, or survivor disputes the amount of restitution imposed by the trial court, 'the court shall hold an evidentiary hearing on restitution.'" *Id*., quoting R.C. 2929.28(A)(1). "At the restitution hearing, the victim or survivor has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender." *Id*., citing R.C. 2929.28(A)(1).

{¶ 17} However, Yafanaro did not dispute the amount of restitution, thus the trial court was not required to hold an evidentiary hearing. Further, "[t]he trial court does not need to conduct a hearing to ascertain the reasonableness of the restitution if there is enough evidence in the record to substantiate the relationship of the offender's criminal conduct with the amount of the victim's loss." *State v. Roberts*,

2014-Ohio-115, ¶ 10 (8th Dist.), citing *State v. Brumback*, 109 Ohio App.3d 65, 83 (9th Dist. 1996). The trial court used the information in the police report to determine the amount of restitution. Given the store owner's many years of experience in the business, awareness of what items were stolen from him, and decision to not ask for restitution regarding the damage to his store, we determine that the restitution amount was supported by competent, credible evidence.

{¶ 18} As previously stated, "[w]here, as here, a defendant fails to object to an order of restitution or the amount of restitution below, the defendant forfeits all but plain error." *State v. Speights*, 2021-Ohio-1194, ¶12 (8th Dist.*). See, e.g., State v. Keslar*, 2019-Ohio-540, ¶ 21 (8th Dist.); *State v. Nickens*, 2017-Ohio-1448, ¶ 4 (8th Dist.). "The party asserting plain error 'bears the burden of proof to demonstrate plain error on the record.'" *Speights* at ¶ 13, quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 22, citing *State v. Quarterman*, 2014-Ohio-4034, ¶ 16 (8th Dist.). "'[A]ppellate courts are to notice plain error only in exceptional circumstances in order to prevent a manifest miscarriage of justice.'" *Id.*, quoting *State v. Keslar*, 2019-Ohio-540, ¶ 21.

{¶ 19} Yafanaro does not argue plain error in his brief. "Where a defendant does not argue plain error on appeal, the appellate court need not consider the issue." *Id.* at ¶ 14. *See, e.g., State v. Sims*, 2016-Ohio-4763, ¶ 11 (10th Dist.) (appellant did not meet burden of demonstrating error on appeal where she only preserved plain error and did not argue the existence of plain error on appeal). "'An appellate court is not obliged to construct or develop arguments to support a

defendant's assignment of error and will not guess at undeveloped claims on appeal.'" *Id.*, quoting *State v. Jacinto*, 2020-Ohio-3722, ¶ 56 (8th Dist.), *see also State v. Collins*, 2008-Ohio-2363, ¶ 91 (8th Dist.) ("'[I]t is not the duty of this Court to develop an argument in support of an assignment of error if one exists.'"), quoting *State v. Franklin*, 2006-Ohio-4569, ¶ 19 (9th Dist.); *State v. Patton*, 2021-Ohio-295, ¶ 25 (1st Dist.) ("'An appeals court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal.'"), quoting *State v. Jones*, 2018-Ohio-4754, ¶ 46 (1st Dist.); *State v. Hamilton*, 2019-Ohio-1829, ¶ 8 (9th Dist.) (appellate court "will not sua sponte fashion an unraised plain error argument and then address it"), quoting *State v. Thomas*, 2015-Ohio-5247, ¶ 9 (9th Dist.). Even if we were to consider plain error with respect to each of the arguments Yafanaro makes on appeal, we would find no plain error in the trial court's decision to order restitution in the amount of $18,290.

{¶ 20} Therefore, Yafanaro's first assignment of error is overruled.

### III. Manifest Weight of the Evidence

#### A. Standard of Review

{¶ 21} "In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion." *State v. Sanders*, 2023-Ohio-1565, ¶ 17 (8th Dist.), citing *State v. Armstrong*, 2021-Ohio-1087, ¶ 24 (8th Dist.). An appellate court examines the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way

and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 388 (1997). "A conviction should be reversed as against the manifest weight of the evidence only in the most exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *id.*

### B. Law and Analysis

{¶ 22} In Yafanaro's second assignment of error he argues that the verdict was against the manifest weight of the evidence. He alleges that the jury lost its way in convicting him because the DNA evidence was easily explainable, and he asserts that this was a case of mistaken identity. Yafanaro claims that his past visits to Savvy could explain how his DNA was on the door frame and how his buttons were on the floor. However, Yafanaro's DNA was found in the exact places where the suspect in the surveillance video rubbed his body against the broken door frame to gain entry into Savvy after breaking the glass. Additionally, the surveillance video showed the suspect with a closed jacket before bending down and breaking into the display case and then standing up with an open jacket. The two buttons missing from the jacket were found in that exact spot.

{¶ 23} The jury's belief that the Yafanaro's DNA was found because he was the suspect does not mean that it lost its way. "[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Gardner*, 2019-Ohio-1780, ¶ 38 (8th Dist.), citing *State v. Medley*, 2018-Ohio-1391, ¶ 20 (8th Dist.). "The trier of

fact is free to believe or disbelieve all, part, or none of the testimony." *Id.*, citing *id.* We find that on this record, the trier of fact did not lose its way and that the conviction was not against the manifest weight of the evidence.

{¶ 24} Therefore, Yafanaro's second assignment of error is overruled.

{¶ 25} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

SEAN C. GALLAGHER, P.J., and
TIMOTHY W. CLARY, J., CONCUR