[Cite as *State v. Armstrong*, 2021-Ohio-1087.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 109709 |
| v. | : | |
| DAVID ARMSTRONG, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 1, 2021

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-641113-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Short and Gregory Ochocki, Assistant Prosecuting Attorneys, *for appellee.*

Ruth R. Fishbein-Cohen, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, David Armstrong, appeals his conviction for burglary, contending that the evidence was insufficient to support his conviction and that his conviction was against the manifest weight of the evidence. Finding no merit to the appeal, we affirm.

## I.  Background

{¶ 2} Armstrong was indicted in a four-count indictment.  Count 1 charged burglary in violation of R.C. 2911.12(A)(1); Count 2 charged domestic violence in violation of R.C. 2919.25(A); Count 3 charged burglary in violation of R.C. 2911.12(A)(3); and Count 4 charged vandalism in violation of R.C. 2909.05(A). Armstrong pleaded not guilty, and the case proceeded to a jury trial.

{¶ 3} Aiesha Wright testified at trial that she and Armstrong had an on-and-off again relationship for about three years.  They sometimes lived together during those years, but were not living together at the time of the June 2019 incident that gave rise to Armstrong's conviction.  Wright and Armstrong have a son; Wright also has a daughter.

{¶ 4} Wright testified that on June 16, 2019, she put both children in the car. She went back into her house to retrieve something, and when she came out, Armstrong was standing next to the car.  He said that he wanted to see his son, so Wright invited him into her home.  Armstrong gave Wright money to buy diapers, and he remained in the house with the son while Wright and her daughter went to the store for approximately ten minutes.

{¶ 5} Wright said that when she and her daughter returned home, Armstrong began pleading with her to get back together again.  When she ignored his request, Armstrong grabbed her phone.  He refused to give it back to her, and began scrolling through it to see who she had been talking to.  When Wright tried to grab her phone,

Armstrong grabbed her arm. Wright said that she managed to get away from Armstrong, put the children in the car, and drive away.

{¶ 6} Wright testified that Armstrong was outside by then, but as she drove away, she saw in her rearview mirror that he was going back into the house. Wright immediately drove to the Maple Heights police station and told the police that Armstrong was in her home. Wright and the police went back to her house, which they discovered was "trashed." Wright testified that Armstrong did not have permission to be in her house when he grabbed her arm, nor when he went back into her house as she drove away with the children.

{¶ 7} Maple Heights police officer Matthew Heitzer testified that he responded to Wright's home on June 16, 2019. He met with Wright, who he said was visibly agitated and scared. Wright told him that her ex-boyfriend had caused the damage in her home; she described Armstrong as a black male who was wearing all black, including a black baseball cap.

{¶ 8} Maple Heights police officer Matthew Mijangos also responded to the scene. After conferring with Officer Heitzer, he spoke with Wright, and then took photographs of the damage to the house, which included two broken windows, a shattered glass table, and a broken TV. Officer Mijangos testified that he observed a large bruise on Wright's upper arm. He identified state's exhibit Nos. 1 through 6 as photographs of shattered glass on the front porch, the broken windows, the shattered TV, the damaged table, and the bruise on Wright's arm. He testified that the backyard of the home was "nothing but mud."

{¶ 9} Officer Mijangos returned to the police station and wrote a report.  As he was on patrol a few hours later, he observed Armstrong out walking;[1] he was dressed in all black and wearing a black baseball cap.  He was also covered in mud.

{¶ 10} Officer Mijangos stopped Armstrong and took him to the police station for questioning.  After he read Armstrong his *Miranda* rights, which Armstrong stated he understood, Armstrong admitted that he had used a steel chair in Wright's home to break the two windows, the table, and TV.  Armstrong also told Officer Mijangos that Wright had thrown him out of the house three weeks prior, and that he got muddy when he fell over the fence in Wright's backyard.

{¶ 11} The jury found Armstrong not guilty of Counts 1 and 2, but guilty of Count 3, burglary, and Count 4, vandalism.  The trial court sentenced him to 18 months' incarceration on Count 3, to be served concurrently with six months on Count 4.  This appeal followed.

## II.  Law and Analysis

### A.  Sufficiency of the Evidence

{¶ 12} In his first assignment of error, Armstrong contends that the evidence was insufficient to support his burglary conviction.

{¶ 13} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial.  *State v. Cottingham*, 8th Dist. Cuyahoga No. 109100, 2020-Ohio-4220, ¶ 32.  An appellate court's function when

---

[1] Officer Mijangos testified that he was familiar with Armstrong from prior encounters with him.

reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

{¶ 14} Armstrong was found guilty of burglary in violation of R.C. 2911.12(A)(3), which provides that "[n]o person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense."

{¶ 15} A trespass occurs when a person, "without privilege to do so, knowingly enter[s] or remain[s] on the land or premises of another." R.C. 2911.21(A)(1). "Where no privilege exists, entry constitutes trespass." *State v. May*, 11th Dist. Lake No. 2010-L-131, 2011-Ohio-5233, ¶ 24. Armstrong argues the evidence was insufficient to support his burglary conviction because Wright invited him into the house, and therefore, he did not trespass.

{¶ 16} The evidence indicates that Wright initially gave Armstrong permission to enter her home and, thus, he had a privilege to be there. A privilege once granted can be revoked, however. *State v. Sumlin*, 8th Dist. Cuyahoga No. 108000, 2020-Ohio-1600, ¶ 27, citing *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1997). "Permission to enter a home is deemed terminated by the act of

committing an offense of violence against a person authorized to revoke the permission. In such a situation, the termination or revocation of the privilege is immediate." *State v. Metcalf*, 2d Dist. Montgomery No. 24338, 2012-Ohio-6045, ¶ 20. *See also State v. Wisecup*, 12th Dist. Clermont No. CA2004-02-014, 2004-Ohio-5652, ¶ 10 ("Where a defendant commits an offense against a person in the person's private dwelling, the defendant forfeits any privilege, becomes a trespasser, and can be culpable for burglary."). Accordingly, even if Armstrong initially had permission to be in Wright's home, the jury could reasonably have found that his privilege to be there was implicitly revoked, and he became a trespasser, the moment he grabbed Wright's arm.

{¶ 17} We recognize that the jury did not convict Armstrong of burglary as charged in Count 1, or domestic violence as charged in Count 2. Nevertheless, even if we assume that Armstrong's privilege was somehow not revoked when he grabbed Wright's arm, Wright testified that Armstrong did not have permission to reenter her home after she fled the home with the children. The evidence also established that Armstrong no longer lived in the home and thus had no privilege to be there absent permission; Officer Mijangos testified that Armstrong told him that Wright had kicked him out of the house three weeks prior to the incident. Construing the evidence in a light most favorable to the prosecution, the evidence was sufficient to establish that Armstrong trespassed in Wright's home when he reentered her house without her permission.

{¶ 18} With respect to the element of force, the requisite force necessary for a burglary conviction is minimal. *State v. Carr*, 3d Dist. Union No. 14-11-20, 2012-Ohio-1679, ¶25. Indeed, this court has found that merely opening an unlocked door or entering through an open door satisfies the force element of the burglary offense. *State v. Erker*, 8th Dist. Cuyahoga No. 107790, 2019-Ohio-3185, ¶ 69, citing *State v. Tomak*, 10th Dist. Franklin No. 03AP-1188, 2004-Ohio-644, ¶ 15. Wright testified that as she drove away, she observed Armstrong entering her home through her open front door. The evidence was therefore sufficient to satisfy the force element of Armstrong's burglary conviction.

{¶ 19} The evidence was also sufficient to establish that Armstrong entered Wright's home with a purpose to commit a criminal offense, i.e., to destroy her property. Indeed, Armstrong admitted that he entered Wright's home and then, using a steel chair, broke two windows, a table, and a TV. He was convicted of vandalism in violation of R.C. 2909.05(A) for these actions.[2]

{¶ 20} Finally, the evidence was sufficient to establish that Wright's home was an "occupied structure," even though no one was in the home when the vandalism occurred. R.C 2909.01(C)(1) defines "occupied structure" as including "any house" that "at the time, is occupied as the permanent or temporary habitation of any person, whether or not any person is actually present." "The relevant inquiry in determining if a structure is occupied concerns the residential purpose of the

---

[2] R.C. 2909.05(A), regarding vandalism, states that "[n]o person shall knowingly cause physical harm to an occupied structure or any of its contents."

dwelling, rather than the presence or absence of an occupant." *State v. Hill*, 8th Dist. Cuyahoga No. 107308, 2019-Ohio-1354, ¶ 17. Wright testified that she and her children were living in the home at the time of the incident. Thus, the evidence established that it was an occupied structure within the meaning of R.C. 2909.01(C).

{¶ 21} Armstrong contends the evidence was insufficient to support his burglary conviction because Wright is allegedly an alcoholic, and her testimony was therefore not credible. But the test for sufficiency is not whether the state's evidence is to be believed, but whether, if believed, the evidence would support a conviction. *State v. Tolliver*, 8th Dist. Cuyahoga No. 108955, 2020-Ohio-3121, ¶ 39. This court does not weigh the credibility of the witnesses when reviewing the sufficiency of the evidence. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79.

{¶ 22} When reviewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of burglary proven beyond a reasonable doubt. The first assignment of error is therefore overruled.

### B. Manifest Weight of the Evidence

{¶ 23} In his second assignment of error, Armstrong contends that his burglary conviction was against the manifest weight of the evidence.

{¶ 24} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Riedel*, 2017-Ohio-8865, 100 N.E.3d 1155, ¶ 91 (8th Dist.). A reviewing court examines the entire

record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 25} This is not that exceptional case. After a careful review of the record and in light of the evidence discussed above, we cannot say that the jury lost its way in convicting Armstrong of burglary. The second assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR