[Cite as *State v. Anderson*, 2024-Ohio-1006.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>        Plaintiff-Appellee,<br><br>- vs -<br><br>ERIC SAN ANDERSON,<br><br>        Defendant-Appellant. | CASE NO. 2023-A-0046<br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2023 CR 00020 |

**O P I N I O N**

Decided: March 18, 2024
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Mark Majer*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Jerri Mitchell*, P.O. Box 1126, Fairport Harbor, OH 44077 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Eric San Anderson, appeals his convictions of two counts of Gross Sexual Imposition, third-degree felonies in violation of R.C. 2907.05(A)(4)(C)(2), and five counts of Disseminating Materials Harmful to Juveniles, fourth-degree felonies in violation of R.C. 2907.31(A)(3)(F). For the following reasons, we affirm the judgment of the Ashtabula County Court of Common Pleas.

{¶2} On January 11, 2023, the Ashtabula County Grand Jury indicted Appellant on ten counts: five counts of Gross Sexual Imposition and five counts of Disseminating Materials Harmful to Juveniles. Appellant pled not guilty to all counts.

{¶3} On May 15, 2023, a jury trial commenced. The following facts were testified to at trial.

{¶4} Appellant and his ex-wife, Arianna Anderson, divorced in 2015. As of 2018, both parents lived in Ashtabula County and had shared parenting over their two minor children: H.A. (D.O.B. 04/22/2009) and L.A. (D.O.B. 09/18/2013). Each parent had custody of the children every other week.

{¶5} On occasion, H.A. heard Appellant whispering to L.A. in a "seductive" and "manipulative" manner, though he never heard what Appellant had actually said. H.A. became suspicious that Appellant had been doing "something" with L.A., specifically that he had been "touching her." H.A. confronted L.A. asking if anything inappropriate happened between her and Appellant. At first, L.A. denied it had. H.A., suspecting that L.A. was being untruthful, raised his voice and asked again. She began mumbling and shaking in response, and H.A. did not further question her. H.A. testified that, based upon knowing his sister her whole life and due to being "observant," he understood her reactions as confirming his suspicions. At the time of trial, L.A. did not recall that conversation with H.A. H.A. also testified that he confronted Appellant about his suspicions that something inappropriate occurred between Appellant and L.A. H.A. testified that, upon confrontation, Appellant replied, "don't worry, it will stop."

{¶6} H.A. stated that on one occasion, he walked into Appellant's bedroom while Appellant was watching pornography on his phone. H.A. asked Appellant what he was watching, and Appellant told him it was pornography. Appellant then showed H.A. the pornography on his phone. H.A. testified that Appellant showed him "naked women" engaging in "intercourse" on his phone.

2

{¶7} H.A. also testified to events occurring on approximately April 30, 2022. Appellant had asked H.A. to help clean the dishes and H.A. refused. A verbal argument ensued, leading to H.A. threatening that he would call the police department and report Appellant for doing "sexual things." But, H.A. did not call the police department; he left the house instead. Upon leaving, the next-door neighbor, having heard the argument, invited H.A. inside her home. Mother and a friend retrieved H.A. hours later. H.A. revealed to them what he had suspected about Appellant. Mother's friend called children's services and an investigation began.

{¶8} L.A. testified at trial. She stated that starting when she was six years old, Appellant "did something very bad towards me, and I would not like that to happen to me again." She elaborated: "He put his hands on me in inappropriate spots, like my [pubic region] and my chest." L.A. said that Appellant had touched her in this manner "many, many, many times." She further confirmed that it happened more times than she could count on her hands. When asked for more information on direct examination, L.A. could not point to many details because "my memory – that was a long time ago, so I might not remember most of that stuff." L.A. also testified that approximately ten times while she was in Appellant's bedroom, Appellant would touch his pubic region in front of her. She explained that she saw a substance that looked like "milk."

{¶9} L.A. next testified that Appellant would often show her "some inappropriate videos of sex." She said that he would show her pornography on his phone and on the television. L.A. stated this happened approximately fifty times. She testified that Appellant had also engaged in "adult kissing" with her. She explained: "He would kiss me

3

like you know how people would kiss you when you got married. He only did that twice, and he kissed me in that kind of way. * * * Just [with] his tongue. That's it."

{¶10} After L.A. testified, the state rested its case. The defense moved for acquittal pursuant to Crim.R. 29. The court denied the motion.

{¶11} Appellant testified last. He denied all allegations against him. He also denied that H.A. confronted him about his suspicions. Appellant further said that he was "shocked" and "appalled" by L.A.'s testimony.

{¶12} The defense rested its case. The jury returned its verdict. It acquitted Appellant on three counts of Gross Sexual Imposition, but found him guilty of two counts of Gross Sexual Imposition and on all counts of Disseminating Materials Harmful to Juveniles.

{¶13} On August 1, 2023, the court held a sentencing hearing. It sentenced Appellant to an aggregate of ten years imprisonment: 60 months imprisonment for each count of Gross Sexual Imposition and 12 months for each count of Disseminating Materials Harmful to Juveniles. The court ordered both counts of Gross Sexual Imposition to be served consecutively. It ordered all counts of Disseminating Materials Harmful to Juveniles to be served consecutively to each other, but concurrently to his sentences for Gross Sexual Imposition. The court also informed Appellant that he must register as a tier II sex offender.

{¶14} Appellant timely appeals and raises two assignments of error:

{¶15} First assignment of error: "The convictions were not supported by sufficient evidence."

4

{¶16} Second assignment of error: "The convictions were against the manifest weight of the evidence."

{¶17} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the [factfinder] or whether the evidence is legally sufficient to support the [factfinder's] verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶18} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

{¶19} Evaluating the weight of the evidence is different. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates to the evidence's persuasiveness. *Id.* "When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *In re Z.C.*, Ohio Supreme Court Slip Opinion No. 2023-

5

Ohio-4703, ¶ 14. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21. The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the [factfinder] is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.,* quoting *Antil* at 67.

{¶20} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶21} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶22} We begin by analyzing whether it was against the manifest weight of the evidence for the jury to find Appellant guilty of two counts of Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4).

6

{¶23} R.C. 2907.05(A)(4) provides that no person shall have sexual contact with another when the other person is less than thirteen years of age.

{¶24} "Sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶25} The Ohio Revised Code does not define sexual arousal or gratification. "Whether a touching is for the purpose of sexual gratification or arousal is a question of fact to be inferred from the type, nature, and circumstances surrounding the contact." *State v. Mack*, 1st Dist. Hamilton No. C-050968, 2006-Ohio-6284, ¶ 9. This court has previously held that "[a] touching alone is not sufficient for a conviction, but it can be strong evidence of intent." *State v. Griffiths*, 11th Dist. Trumbull No. 2000-T-0131, 2002 WL 5307, *3 (Dec. 28, 2001), citing *In re Anderson*, 116 Ohio App.3d 441, 444 (12th Dist.1996). "There is no requirement that there be direct testimony regarding sexual arousal or gratification." *State v. Meredith*, 12th Dist. Warren No. CA2004-06-062, 2005-Ohio-062, ¶ 13.

{¶26} Appellant's convictions for Gross Sexual Imposition were not against the manifest weight of the evidence. It is uncontested that L.A. was under the age of thirteen at the time the events allegedly occurred. Appellant argues that his convictions were against the manifest weight of the evidence because L.A.'s testimony was "nothing more than guesses" and she did not remember specific details. Based upon L.A.'s testimony, a reasonable jury could find that Appellant had sexual contact with her on, at least, two occasions. L.A. testified that Appellant had put his hands on her "in inappropriate spots,

7

like my [pubic region] and my chest. * * * many, many, many times." Appellant asserts that the state did not present any physical or otherwise corroborating testimony. While true, the jury heard L.A.'s testimony and, as factfinder, was free to believe (or disbelieve) her testimony and determine her credibility.

{¶27} A reasonable jury also could have found that Appellant engaged in the sexual contact with L.A. for the purpose of sexual gratification or arousal. The circumstances surrounding the events are informative. In addition to touching her pubic region and breasts, L.A. also testified that Appellant had touched his own pubic region in front of her and had kissed her on the mouth.

{¶28} Regarding Appellant's argument that L.A. could not elaborate on specific details, the details that she did testify to were sufficient to prove that Appellant had touched L.A's pubic region and breasts for the purpose of sexual gratification or arousal.

{¶29} Appellant also argues that his convictions were against the manifest weight of the evidence because L.A. could not establish specific timeframes for his alleged behavior.

{¶30} But, "in cases involving alleged sexual misconduct with young children, this court and other courts have held that it is not mandatory for the state to provide precise dates and times because young children are usually unable to remember such specific information and such incidents usually take place over an extended span of time." *State v. LaTorres*, 11th Dist. Ashtabula Nos. 2000-A-0060 and 2000-A-0062, 2001 WL 901045, *4 (Aug. 10, 2001). "[I]f the evidence supports a finding that the defendant was alone with the victim during the relevant time frame and the defense is that the sexual abuse never

Case No. 2023-A-0046

occurred * * * the inability to identify a specific date does not require reversal of a conviction." *Id.*

**{¶31}** Appellant's assignments of error as to his convictions of Gross Sexual Imposition are without merit.

**{¶32}** We next consider whether it was against the manifest weight of the evidence for the jury to find Appellant guilty of five counts of Disseminating Materials Harmful to Juveniles, in violation of R.C. 2907.31(A)(3)(F).

**{¶33}** R.C. 2907.31(A)(3) provides: "No person, with knowledge of its character or content, shall recklessly * * * [w]hile in the physical proximity of the juvenile or law enforcement officer posing as a juvenile, allow any juvenile or law enforcement officer posing as a juvenile to review or peruse any material or view any live performance that is harmful to juveniles."

**{¶34}** "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C)

**{¶35}** "'Harmful to juveniles' means that quality of any material or performance describing or representing nudity, sexual conduct, sexual excitement, or sado-masochistic abuse in any form to which: (1) The material or performance, when considered as a whole, appeals to the prurient interest of juveniles in sex; (2) the material or performance is patently offensive to prevailing standards in the adult community as a

9

whole with respect to what is suitable for juveniles; (3) the material or performance, when considered as a whole, lacks serious literary, artistic, political, and scientific value for juveniles." R.C. 2907.01(E).

{¶36} A "prurient interest" is a "shameful or morbid interest in nudity, sex, or excretion * * * [which] goes substantially beyond customary limits of candor in description or representation of such matters * * *." *State v. Casto*, 9th Dist. Medina No. 2976-M, 2000 WL 1288178, *5 (Sept. 13, 2000), quoting *City of Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 116, 539 N.E.2d 140 (1989). "Whether a work appeals to the prurient interest or depicts sexual conduct in a patently offensive way is governed by contemporary community standards." *Casto* at *5. "To be patently offensive, the work must depict or describe 'hard core' sexual conduct." *Id.*, quoting *State v. Ward*, 85 Ohio App.3d 378, 381 (9th Dist.1993). "This requirement is satisfied if the material depicts or describes activity [that] meets the definition of 'sexual conduct' under R.C. 2907.01(A), which includes cunnilingus." *Id.*

{¶37} We first note that it is uncontested that pornography, as alleged in this case, would fall under R.C. 2907.31 as a material or live performance harmful to juveniles. It is also uncontested that both H.A. and L.A. are juveniles.

{¶38} In this case, a reasonable jury could find that Appellant committed, at least, five counts of Disseminating Materials Harmful to Juveniles. H.A. testified that on one occasion, Appellant showed him "naked women" engaging in "intercourse" on his phone. L.A. testified that (approximately fifty times) Appellant had shown her "some inappropriate videos of sex" on his phone and on the television. A jury could infer from the children's

10

testimony that Appellant, with knowledge of its character or content, recklessly (and while in the children's presence) allowed them to view pornography.

{¶39} Appellant contends that the children's testimony was not credible because both "H.A. and L.A. had motive to be untruthful." As noted above, the jury, as factfinder, heard all evidence and testimony at trial, and was free to believe or disbelieve any testimony and to determine credibility.

{¶40} Upon review, this is not the exceptional case in which the evidence weighs heavily against the convictions. Because Appellant's convictions were not against the manifest weight of the evidence, there was sufficient evidence to support his convictions.

{¶41} Appellant's assignments of error are without merit.

{¶42} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

11

Case No. 2023-A-0046