[Cite as *State v. Greene*, 2026-Ohio-1551.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                        :

    Plaintiff-Appellee,          :

                                              No. 115111

    v.                                   :

WILLIAM GREENE,                       :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 30, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694082-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mason McCarthy and Caroline Maver, Assistant Prosecuting Attorneys, *for appellee.*

Wegman Hessler Valore and Matthew O. Williams, *for appellant.*

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant William Greene ("Greene") appeals his convictions and asks this court to reverse and remand to the trial court for a new trial. We affirm the appellant's convictions.

{¶ 2} After a jury trial, Greene was found guilty of two counts of gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05(A)(4); and two counts of disseminating matter harmful to juveniles, a first-degree misdemeanor, in violation of R.C. 2907.31(A)(3), and a fourth-degree felony, in violation of R.C. 2907.31(A)(3). Greene was sentenced to 36 months in prison.

## I. Facts and Procedural History

{¶ 3} Greene was accused of victimizing the two daughters of his girlfriend. The victims, M.S. and K.S., were born November 17, 2010, and August 30, 2009, respectively. The victims met Greene in 2018. Greene moved into the mother's home with her daughters in 2020. At trial, M.S. testified that Greene touched her inappropriately two weeks after he moved in with them. Tr. 527. She stated that she was sleeping and woke up to find Greene in front of her, wearing her mother's robe, touching his penis. The second incident, M.S. testified that Greene put his penis in her hand. Tr. 530. M.S. stated that she awoke to Greene rubbing his penis back and forth in her hand. Thereafter, M.S. texted her father. M.S. read the text messages at trial, stating: "My mom boyfriend just put his penis — private part on my hand. I woke up. And he tried to lie and say it was bedbugs in my bed." Tr. 535. The date of the text message was April 20, 2022. M.S.'s father told her to tell her mother, and her father came to pick her up from the home. She stayed with him for two weeks and then went back to live with her mother. Tr. 547. After returning home, M.S. told her mother about the incidents. Despite informing her mother, Greene continued to live in the home, making M.S. uncomfortable. M.S. testified

that she was frustrated that Greene was not held accountable. As a result of her stress, M.S. lied to the director of the recreational center she attended, stating that her mother killed M.S.'s three-year old sister. M.S. stated that her intention was to get people to listen to her so she would not have to live with Greene any longer.

{¶ 4} After M.S.'s testimony, K.S. testified that from time to time, Greene would come into her room naked. Tr. 631. One night, while K.S. was sleeping, Greene put his penis in her hand. She also testified that after that night she witnessed Greene masturbating and watching pornography on his phone while they were both in the living room. After that incident, on another day, K.S. was in the living room watching TV when she observed Greene sitting in the dining room on a stool masturbating again. Tr. 644. When asked how old she was when the incidents occurred, K.S. responded, "[p]robably, like, ten. I was in my double digits, ten or eleven." Tr. 636.

{¶ 5} K.S. further testified that she reported the incidents to her grandmother and her father. M.S.'s and K.S.'s grandmother and their respective fathers took them to the police station to report Greene in 2022. Tr. 630. K.S. stated, "We went to the police to talk about what happened between me, my sister, and the boyfriend William Greene." *Id.* Both K.S. and M.S. would have been under 13 years old. Their grandmother also took them to the hospital where a SANE examination was conducted on the girls. The girls were also interviewed by Stephanie Moore ("Moore"), an investigator in the sex-abuse department for the Cuyahoga County Division of Children and Family Services ("CCDCFS").

{¶ 6} Moore testified that she received a referral regarding inappropriate touching of M.S. and K.S. Tr. 816. Moore initiated contact and interviewed the girls on October 17, 2022. Tr. 727, 816, and 840. At trial, the State played video interviews between Moore and each girl. Moore testified that M.S. disclosed that Greene put his penis in her hand while she was in bed. Moore also testified that during her interview with K.S., K.S. disclosed that Greene also put his penis her in hand while she was sleep in her bed. K.S. also disclosed to Moore that Greene masturbated twice in front of her. Moore conducted further investigations into the allegations, she gave a disposition of substantiated in the case, and explained that her disposition was based on the credible, consistent disclosures of the girls, the consistency of the evidence from the FBI regarding the text messages from a phone dump, and the information that was collected at the time of the investigation. Tr. 836.

{¶ 7} At the end of the trial, the jury found Greene guilty of two counts of gross sexual imposition and two counts of disseminating matter harmful to juveniles.

{¶ 8} Greene filed this appeal, assigning three errors for our review:

1. The trial court erred prejudicing Appellant by admitting hearsay statements from forensic interviews of M.S. and K.S. which served no medical purpose and were clearly testimonial;

2. Appellant's convictions for the Gross Sexual Imposition on K.S. and for Disseminating Matter Harmful to both M.S. and K.S. are not supported by sufficient evidence; and

3. Appellant's Convictions are Against the Manifest Weight of the Evidence.

## II. Hearsay Statements

### A. Standard of Review

{¶ 9} "'The admission of evidence lies within the broad discretion of a trial court, and a reviewing court [will] not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice.'" *State v. Hutchinson*, 2025-Ohio-4674, ¶ 20 (8th Dist.), quoting *State v. Noling*, 2002-Ohio-7044, ¶ 43. "An abuse of discretion occurs when the trial court exercises 'its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.'" *Id.*, quoting *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

### B. Law and Analysis

{¶ 10} In Greene's first assignment of error, he argues that the trial court erred when it admitted portions of the forensic interview of K.S. and M.S. because these interviews were conducted for the purposes of investigation and produced testimonial and inadmissible statements. More specifically, Greene asserts that the interviews that were produced served no medical purpose and were clearly testimonial. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted in the statement." Under Evid.R. 802, hearsay is inadmissible unless the out-of-court statement falls within a recognized exception to the hearsay rule. Evid.R. 803 sets forth several exceptions including Evid.R. 803(4), which provides an exception for statements made for purposes of medical diagnosis and treatment. Evid.R. 803(4) provides:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character or the cause or external source thereof insofar as reasonably pertinent to diagnosis and treatment.

*Hutchinson* at ¶ 22.

{¶ 11} Greene cites *State v. Arnold*, 2010-Ohio-2742, in support of his claim that Moore's forensic interviews of M.S. and K.S. contain nothing but inadmissible hearsay. In *Arnold*, the Ohio Supreme Court considered whether a child's hearsay statements contained in a forensic interview violated the Confrontation Clause of the Ohio and United States Constitutions.

{¶ 12} The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court explained that the key question for determining whether a Confrontation Clause violation has occurred is whether an out-of-court statement is "testimonial." If a statement is testimonial, its admission into evidence will violate the defendant's right to confrontation if the defendant does not have an opportunity to cross-examine the declarant. *Id.* at 53-56.

{¶ 13} Because M.S. and K.S. testified at trial, the Confrontation Clause was not implicated, and the *Arnold* decision has limited application in this case. *State v. Griffin*, 2025-Ohio-1459, ¶ 34-35, and 38 (8th Dist.), citing *Crawford* at 59, fn. 9

("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

{¶ 14} Nevertheless, *Arnold*, 2010-Ohio-2742, is relevant for determining whether the statements M.S. and K.S. expressed during the forensic interview were made for purposes of medical diagnosis or treatment. In *Arnold*, the Court explained that child-advocacy centers are unique because they involve interdisciplinary teams of people who cooperate "'so that the child is interviewed only once and will not have to retell the story multiple times.'" *Hutchinson*, 2025-Ohio-4674, at ¶ 24 (8th Dist.), quoting *Arnold* at ¶ 33. "'Most members of the team retain their autonomy'" such that "'[n]either police officers nor medical personnel become agents of the other.'" *Id.*, quoting *id.* "However, to avoid the need for multiple interviews, 'the interviewer must elicit as much information from the child as possible in a single interview and must gather the information needed by each team member.'" *Id.*, quoting *id.*

> Thus, the interview serves dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim. The interviewer acts as an agent of each member of the multidisciplinary team.

*Id.,* quoting *id.*

{¶ 15} As a result, some of M.S.'s and K.S.'s statements could have served an investigative purpose while other statements could have been elicited for purposes of medical diagnosis or treatment. *Arnold* at ¶ 34. In *State v. Fears*, 2017-Ohio-6978, ¶ 38 (8th Dist.), this court held that "[t]o the extent a victim's statement to a

social worker is for investigative or prosecutorial purposes, the statement will not fall within the hearsay exception under Evid.R. 803(4)." *Id.* at ¶ 38, citing *State v. Rose*, 2012-Ohio-5607, ¶ 42 (12th Dist.).

{¶ 16} Greene argues that the nature of the questioning and the information elicited demonstrates an investigative purpose. He further contends that Moore made no referrals, treatment decisions, or diagnosis for either girl.

> However, courts have held that descriptions of sexual abuse itself and the identification of the perpetrator are within the scope of statements made for medical and treatment purposes when the interviewer is seeking to determine if the sexual abuse was indicated, whether the child victim remained at risk, and whether the child victim requires treatment. . . . ("[C]ourts have consistently found that a description of the encounter and identification of the perpetrator are within [the] scope of statements [made] for medical treatment and diagnosis.").

*Hutchinson* at ¶ 25.

{¶ 17} Greene contends that the interviews are testimonial statements of a highly prejudicial nature and should not have been put into evidence. Although some of the questions and answers regarding specific acts of abuse and the identity of the perpetrator could be used for criminal prosecution, there is no evidence that Moore conducted the interview solely for that purpose. And, as previously stated, statements describing the abuse and identifying the perpetrator are considered within the scope of treatment when the interviewer is seeking to determine if the abuse is indicated or if the child remained at risk. *Griffin*, 2025-Ohio-1459, at ¶ 42, citing *Fears,* 2017-Ohio-6978, at ¶ 45; *In re D.L.*, 2005-Ohio-2320, ¶ 21 (8th Dist.).

{¶ 18} We conclude that the trial court did not err when it allowed statements from the forensic interviews of M.S. and K.S. to be admitted at trial.

{¶ 19} Therefore, Greene's first assignment of error is overruled.

## III. Sufficiency and Manifest Weight of the Evidence

### A. Standard of Review

{¶ 20} An appellate court's purpose when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Sanders*, 2023-Ohio-1565, ¶ 11 (8th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.,* citing *id.*

{¶ 21} "In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion." *Id.* at ¶ 17, citing *State v. Armstrong*, 2021-Ohio-1087, ¶ 24 (8th Dist.). An appellate court examines the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 388 (1997). "A

conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.,* quoting *id.*

**B. Law and Analysis**

{¶ 22} In Greene's second and third assignments of error, he argues that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. Specifically, as it relates to the sufficiency of the evidence, Greene contends that his conviction for gross sexual imposition on K.S. was not supported by sufficient evidence without any specific offense dates in evidence. Greene questions how the jury could reasonably find that the age element had been proven beyond a reasonable doubt. He further contends that his convictions for disseminating matter harmful to K.S. and M.S. through performative masturbation and disseminating harmful matter to K.S. by sharing pornography were not supported by sufficient evidence. As to manifest weight, Greene argues that the weight of the evidence does not support his conviction for gross sexual imposition or for disseminating matter harmful to juveniles.

{¶ 23} Greene was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which states: "No person shall have sexual contact with another . . . when . . . [t]he other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person." In Greene's first issue, he argues that because there were no specific dates for the gross sexual imposition, it cannot be demonstrated that K.S. was less than 13 years old. K.S.'s

birthday is August 30, 2009. The girls testified that Greene moved into the home with them in 2020, when M.S. was 10 and K.S. was 11. Although a specific date of abuse was not given, K.S. testified that she recalled the abuse of Greene placing his penis in her hand and moving back and forth occurring when she was around 10, 11, or maybe 12. Tr. 365-636. K.S. went on to testify that she was "almost a mute" after the incident. Tr. 637. K.S. did not tell anyone but stated that she eventually told her grandmother who then called 696-KIDS. Tr. 652-654. K.S. testified that she and M.S. went to the police in 2022 to report the incidents between the sisters and Greene. Additional testimony indicates that Moore first interviewed the girls in October 2022. Given this evidence it is clear from the record that K.S. was under 13 when Greene abused her. "'Where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged.'" *State v. Yaacov*, 2006-Ohio-5321, ¶ 17 (8th Dist.), quoting *State v. Barnecut*, 44 Ohio App.3d 149, 152 (5th Dist. 1988); *see also State v. Gus*, 2005-Ohio-6717 (8th Dist.). "This is partly due to the fact that the specific date and time of the offense are not elements of the crimes charged." *Yaacov*, citing *Gus* at ¶ 6. "Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time." *Id.*, citing *State v. Mundy*, 99 Ohio App.3d 275, 296, (2d Dist. 1994). "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended

period of abuse." *Id.* "Thus, an allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." *Id.* We find that there was sufficient evidence presented that K.S. was under the age of 13.

{¶ 24} Next, Greene argues that his convictions for dissemination matter harmful to K.S. and M.S., through performative masturbation, were not supported by sufficient evidence because he was masturbating in the hallway of a home and not in public.

{¶ 25} Greene was convicted of two counts of disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(3), one count a misdemeanor of the first degree and one count a felony of the fourth degree with a furthermore clause, which states: "No person, with knowledge of its character or content, shall recklessly . . . [w]hile in the physical proximity of the juvenile . . . allow any juvenile . . . to review or peruse any material or view any live performance that is harmful to juveniles."

> "'Harmful to juveniles' means that quality of any material or performance describing or representing nudity, sexual conduct, sexual excitement, or sado-masochistic abuse in any form to which: (1) The material or performance, when considered as a whole, appeals to the prurient interest of juveniles in sex; (2) the material or performance is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for juveniles; (3) the material or performance, when considered as a whole, lacks serious literary, artistic, political, and scientific value for juveniles.

*State v. Anderson*, 2024-Ohio-1006, ¶ 35 (11th Dist.), quoting R.C. 2907.01(E).

{¶ 26} M.S. testified that she woke up one night and observed Greene touching his penis in front of her while he was wearing M.S.'s mother's bathrobe. Tr. 544-545. K.S. testified that she witnessed Greene masturbating and watching

pornography on his phone while they were both in the living room. After that incident, on another day, K.S. was in the living room watching TV when she observed Greene sitting in the dining room on a stool masturbating again. Tr. 644. Greene was not in the privacy of his room, but rather in rooms shared by the entire family while he was masturbating. He was aware that K.S. was in the living room both times and that M.S. was in her own room while he masturbated. Thus, we determine that Greene's acts of masturbating in front of both girls were harmful to them. However Greene contends that his performance did not appeal to the prurient interests of juveniles in sex and it fails to qualify as obscene.

{¶ 27} "A 'prurient interest' is a 'shameful or morbid interest in nudity, sex, or excretion . . . [which] goes substantially beyond customary limits of candor in description or representation of such matters . . . .'" *Id.* at ¶ 36, quoting *State v. Casto*, 2000 Ohio App. LEXIS 4124, *5 (9th Dist. Sept. 13, 2000). "'Whether a work appeals to the prurient interest or depicts sexual conduct in a patently offensive way is governed by contemporary community standards.'" *Id.*, quoting *id.*

{¶ 28} Both girls testified that they witnessed Greene masturbating in their presence. M.S. woke up to Greene masturbating in front of her in her bedroom, and K.S. witnessed Greene masturbating in the dining and living rooms of their home while she was in the living room on both occasions. Therefore, Greene's convictions for disseminating matter harmful to K.S. and M.S. through performative masturbation, in violation of R.C. 2907.31(A)(3), are supported by sufficient evidence.

{¶ 29} Next, Greene argues that his conviction for disseminating matter harmful to juveniles, as it relates to showing K.S. pornography, is not supported by sufficient evidence because K.S. gave no description of the video Greene was playing on his phone aside from the words "pornography" and "inappropriate."

{¶ 30} The record reveals that K.S. testified that while she was on the small couch Greene came into the living room, sat on the long couch, started masturbating while watching an inappropriate video. Tr. 639. When asked what she meant by inappropriate, K.S. stated that it was a "pornography video." Tr. 642. R.C. 2907.31 (A)(3) states in part that "no person, with knowledge of its character or content shall recklessly do . . . [w]hile in the physical proximity of the juvenile . . . ." It is uncontested that Greene, with knowledge of its content, was viewing a video while masturbating and that K.S. was in close proximity. It is also uncontested that K.S. saw the video out of the corner of her eye. *Id.* Finally, K.S. is a juvenile. There is evidence that Greene allowed K.S. to view him masturbating while watching a video, and it is reasonable for a trier of fact to have determined, under the circumstances herein, that such a performance was obscene and/or harmful to juveniles. *See In re Z.C.*, 2006-Ohio-5378, ¶ 17 (2d Dist.). We determine from these facts that Greene's watching pornography in K.S's presence was harmful.

{¶ 31} K.S.'s testimony could reasonably be construed as indicating that Greene's overt act of masturbation was not only a display, but that it tended to represent masturbation as a mere object of Greene's own sexual appetite. The self-gratification component of masturbation is obvious, but defendant appeared to

engage in masturbation for more than just physical self-gratification. Clearly, his intent was to arouse his own lust by performing masturbation while watching pornography, in front of a young child, rather than in private and was a patently offensive act. "On these facts, we find the act of masturbation was obscene." *State v. Zimmer*, 1999 Ohio App. LEXIS 1833 (8th Dist. Apr. 22, 1999). Furthermore, there was no evidence that the material or performance, when considered as a whole, had any artistic, literary, scientific, or political value for juveniles.

{¶ 32} Therefore, we find that Greene's convictions for disseminating material harmful to juveniles as it relates to showing K.S. pornography was supported by sufficient evidence.

{¶ 33} Greene further argues that his convictions were against the manifest weight of the evidence because he took numerous steps to make sure he was unseen while masturbating. As previously stated, Greene masturbated in the common areas of the home, the living room and dining room. He also masturbated in M.S.'s bedroom in front of her. He was not in his bedroom or the bathroom. Again, Greene was convicted of two counts disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(3), which states: "No person, with knowledge of its character or content, shall recklessly do . . . [w]hile in the physical proximity of the juvenile, allow any juvenile to review or peruse any material or view any live performance that is harmful to juveniles."

{¶ 34} "'A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the

person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.'" *Anderson*, 2024-Ohio-1006, at ¶ 34 (11th Dist.), quoting R.C. 2901.22(C).

{¶ 35} K.S. testified that while she and Greene were sitting in the living room, Greene was viewing a pornographic video. K.S. could clearly see the contents of the video. Tr. 644. Greene then asked K.S. if she would help him with a favor, to which she refused. Then Greene started masturbating in front of her. Thus, Greene's convictions for disseminating matter harmful to juveniles were not against the manifest weight of the evidence.

{¶ 36} Although we review credibility when considering the manifest weight of the evidence, "we are conscious of the fact that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact." *State v. Robinson*, 2018-Ohio-2058, ¶ 22 (8th Dist.), citing *State v. Bradley*, 2012-Ohio-2765, ¶ 14 (8th Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230 (1967). "Undeniably, the trier of fact is best able 'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24. "Here, the jury may take note of any inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony.'" *Id.*, quoting

*State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 37} Next, Greene argues that his convictions for gross sexual imposition are against the manifest weight of the evidence because K.S.'s testimony was borrowed from M.S., and M.S. lied about other things like her mother killing her sister. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other.'" (Emphasis deleted.) *Thompkins*, 78 Ohio St.3d at 387, quoting *Black's Law Dictionary* 1594 (6th Ed. 1990). "A manifest weight challenge attacks the credibility of the evidence presented and questions whether the prosecution met its burden of persuasion at trial." *State v. Rodriguez*, 2021-Ohio-2580, ¶ 22 (8th Dist.), citing *Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.). "It 'addresses the evidence's effect of inducing belief,' i.e., whether the state's or the defendant's evidence is more persuasive." *Whitsett* at *id.*, quoting *Wilson* at ¶ 25.

{¶ 38} Regardless of whether there is some conflict between M.S.'s testimony and K.S.'s testimony, there is no material inconsistency as to the evidence that Greene committed the actual crimes of conviction. *See State v. Hill*, 2014-Ohio-387, ¶ 37 (8th Dist.) ("A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony."). Here, the jury heard the testimony, including M.S.'s and K.S.'s accounts, and it chose to believe some or all of their testimony with the alleged inconsistencies regarding the counts of gross sexual imposition and dissemination matter harmful to juveniles. Based on the

record before us we cannot say that the trier of fact clearly lost its way. Thus, Greene's convictions were not against the manifest weight of the evidence.

{¶ 39} Therefore, Greene's second and third assignments of error are overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., and
MARY J. BOYLE, J., CONCUR